

**STATE OF NEW YORK**
OFFICE OF THE ATTORNEY GENERAL

| | |
|---|---|
| LETITIA JAMES<br>ATTORNEY GENERAL | DIVISION OF ECONOMIC JUSTICE<br>ANTITRUST BUREAU |

**By ECF**                                                                                                   July 25, 2019

Hon. Robert W. Lehrburger
United States Magistrate Judge
500 Pearl St.
New York, NY 10007-1312

Re:   *State of New York et al. v. Deutsche Telekom et al.*, 1:19-cv-05434-VM
       <u>Letter Motion for Pre-Motion Discovery Conference (1 of 3) – All Defendants</u>

Dear Magistrate Judge Lehrburger:

Plaintiff States served initial Requests for Production on June 24.  The parties have engaged in numerous meet-and-confer discussions,[1] but Defendants continue to refuse to produce certain categories of documents that go to the heart of this merger challenge.  Plaintiff States respectfully request a discovery conference pursuant to Local Rule 37.2, and will be prepared to discuss these issues at the upcoming August 1, 2019, conference.[2]

As a threshold matter, there is no support for Defendants' position that Plaintiff States are entitled to little or no document discovery because Defendants previously produced documents in connection with a pre-suit investigation.  A pre-suit investigation focuses on obtaining information sufficient to make an enforcement decision.  After a decision to litigate is made, Plaintiff States are entitled to discovery under the federal rules to prepare their case.  *See, e.g.*, *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("no authority . . . suggests that it is appropriate to limit the [agency]'s right to take discovery based upon the extent of its previous investigation"); *In re Broiler Chicken Antitrust Litig.*, 2018 WL 3586183, at *7 (N.D. Ill. July 26, 2018) (earlier investigation "does not mean [defendant] should be excused from performing custodial searches").  Defendants also fail to recognize that most of their prior productions were made in 2018 and do not cover developments over the past year that are highly relevant to the competitive effects of Defendants' proposed merger.  Indeed, just this month, Defendants have been engaged in negotiations with the United States Department of Justice ("USDOJ") to reach an agreement that Defendants themselves will rely on to defend this merger.

**(1)    Communications re: Proposed Remedies or Agreements with DISH/Other Third Parties (All Defendants):** Plaintiff States understand that Defendants will shortly announce a restructuring of

---

[1] The parties have negotiated extensively by telephone, emails, and letters over the past three weeks.
[2] Rather than submit a separate letter for each of the four Defendants, Plaintiff States have consolidated the issues for the Court's consideration. This letter addresses five issues that are common to multiple Defendants.  Plaintiff States are addressing issues specific to individual Defendants in separate letters.

their merger as part of a settlement with USDOJ.  As part of that restructuring, Defendants are apparently entering into agreements with USDOJ and DISH Network that are purportedly designed to help DISH become a new mobile wireless competitor.  And earlier this year, Defendants offered several commitments to the Federal Communications Commission ("FCC") related to their merger to secure the FCC's approval.  Defendants have taken the position that any such agreements and commitments are relevant to the overall transaction that Plaintiff States are challenging, and Plaintiff States therefore require fact and expert discovery to mount such a challenge.

Plaintiff States seek internal and external communications concerning the agreements and commitments described above.  Ex. 1 (Request Nos. 6 & 13); Exs. 2, 3, 6 & 7 (highlighted correspondence).  Defendants have agreed to produce certain "substantive" communications with DISH, USDOJ, and the FCC.  But T-Mobile and Deutsche Telekom refuse to produce recent (1) internal substantive communications discussing the USDOJ, FCC and DISH commitments, and (2) external substantive communications with financial advisors, third parties or other Defendants.  These communications are highly relevant.  For example, Defendants' internal communications may reveal that certain operational terms of their agreements with DISH are designed to hobble DISH as a meaningful competitor.  Defendants do not appear to be claiming that these documents are irrelevant.  Rather, they claim the internal documents are "largely privileged."  Ex. 7 at 3.  That statement is a tacit admission that at least *some* communications are not privileged.  These non-privileged communications, as well as all non-privileged external communications, should be produced immediately.[3]

Sprint and SoftBank, for their part, have offered to produce communications regarding these topics from only a single custodian: Marcelo Claure, Sprint's former CEO.  Sprint does not represent, however, that Mr. Claure is the only Sprint representative who had substantive communications regarding the recent commitments.  Sprint and SoftBank should search the files of each representative who had a significant role in negotiating or commenting on the commitments.[4]

**(2)** **<u>Documents Regarding Competition in Local Markets (Sprint and T-Mobile)</u>:** Plaintiff States seek documents concerning Defendants' marketing efforts, strategy, investments, and technical capabilities in certain specific local markets.  Ex. 5.  As the Court has noted, "[t]he proposed merger implicates a complex network of national, regional, and even local markets."  Ex. 8 (Transcript of Hearing, June 21, 2019, 6:7-8).  Indeed, Plaintiff States' Complaint alleges anti-competitive effects at both a national *and* local level.[5]  Plaintiff States need access to documents from these local markets to show the extent to which Defendants compete for customers in these markets and how the merger will result in a loss of that local competition.  Plaintiff States narrowed the number of local markets at issue from 25 down to just 10.

---

[3] Defendants should also be required to log any purportedly privileged communications that are not to or from outside counsel.

[4] Sprint also proposed search terms that are inadequate.  *See* Ex. 3 at App. A and Ex. 7 at 3.  For example, these terms would not capture documents related to the FCC commitments, and would likely miss many DISH-related documents.

[5] Sprint and co-defendant T-Mobile have both acknowledged the relevance of local markets in court filings and with the FCC.  *See, e.g.*, Complaint at ¶¶ 130-131, *Sprint Nextel Corp. v. AT&T, Inc.*, No. 11-CV-1600-ESH (D.D.C. Sept. 6, 2011), ECF No. 1 ("The effect of the proposed acquisition [could] be evaluated in local markets, in addition to a national market" because "each . . . CMA in which AT&T and T-Mobile compete is also a relevant geographic market.").

Defendants have offered to produce documents from just six custodians—senior executives whose day-to-day responsibilities are *national* in scope.  This proposal is not adequate, because these custodians are unlikely to have sufficient documents focused on local-market competition.  Plaintiff States have asked for additional local-market custodians who work at the regional level of T-Mobile and Sprint and are more likely to have responsive documents.  *See* Exs. 5 at p.3 & 7 at p.6-7.

**(3)     Spectrum and MVNO Agreements Since June 2018 (Sprint and T-Mobile):** Defendants have claimed that the lack of available wireless spectrum is a justification for their merger.  And Defendants have also taken the position that small local wireless carriers with roaming agreements and certain re-sellers of wireless service (called "MVNOs") are competitive constraints in this market.  Plaintiff States therefore seek T-Mobile's and Sprint's recent documents and communications regarding the availability of spectrum (including potential spectrum swaps and spectrum sharing agreements) and Defendants' roaming agreements and agreements with MVNOs.  Ex. 1 (Request Nos. 22 & 23), Ex. 6 at p.11.  Plaintiff States and Plaintiff States' experts should be given access to these documents so that they can rebut Defendants' arguments.

**(4)     Communications with Nielsen (Sprint and T-Mobile):** Defendants have created and submitted certain economic models justifying their merger that rely on data from a third party, Nielsen.  Plaintiff States seek that data as well as documents and communications concerning that data.  Ex. 1 (Request No. 19).  For example, communications showing flaws in the Nielsen data or the unreliability of that data would be highly probative in assessing the reliability of Defendants' models.  Also, Plaintiff States' experts cannot fairly evaluate Defendants' models without access to the up-to-date underlying data.

**(5)     Documents Responsive to Request Nos. 27-44 (Sprint) and 28-45 (T-Mobile):** Request Nos. 27-44 and 28-45 seek a range of documents relevant to Defendants' current economics and the effect of the merger on those economics.  For example, Sprint Request No. 30 asks for documents regarding "customer lifetime value"; Request No. 31 asks for documents concerning agreements with MVNOs and MNOS; and Request No. 40 asks for documents, including surveys and analyses, of consumer switching.  Defendants do not dispute that these documents are relevant.  Instead, Defendants have simply pointed to their 2018 productions to the USDOJ and stonewalled Plaintiff States' questions about whether Defendants are willing to produce documents and, if so, which ones.

Respectfully submitted,

*/s/ J. Kasha*

Jeremy R. Kasha
Assistant Attorney General
Antitrust Bureau

Attachments (Exhibits 1 through 9)

Cc:     All Counsel of Record