# Ex. 8

**Transcript (excerpt) from Hearing before Hon. Victor Marrero, dated June 21, 2019**

```
 1   UNITED STATES DISTRICT COURT        Excerpt - Relevant Pages Only
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   STATE OF NEW YORK, et al.,

 4                  Plaintiffs,

 5           v.                            19 Civ. 5434 (VM)

 6   DEUTSCHE TELEKOM AG, et al.,

 7                  Defendants.
                                           Conference
 8   ------------------------------x
                                           New York, N.Y.
 9                                         June 21, 2019
                                           10:00 a.m.
10
     Before:
11
                     HON. VICTOR MARRERO,
12
                                           District Judge
13

14                       APPEARANCES

15   NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
          Attorneys for Plaintiff State of New York
16   BY:  BEAU W. BUFFIER
          ELINOR R. HOFFMANN
17
     MUNGER, TOLLES & OLSON (LA)
18        Attorney for Plaintiff State of California
     BY:  GLENN D. POMERANTZ
19
     KEKER & VAN NEST, LLP
20        Attorney for Plaintiff State of California
     BY:  PAULA L. BLIZZARD
21
     GIBSON DUNN & CRUTCHER
22        Attorney for Defendant Deutsche Telekom AG
     BY:   RICHARD PARKER
23

24

25
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

1  Verizon, and because Canon (3)(c)(1)(C) of the Federal Code of
2  Judicial Conduct requires a judge to recuse from presiding over
3  any matter in which he or she has a financial interest that
4  would be substantially affected by the outcome of the case.
5           Here, having considered that standard, and after
6  consultation with the attorneys at the Administrative Office of
7  U.S. Courts, I have determined that because my Verizon pension
8  was both fixed as to the amount and fully vested years ago, it
9  would not be affected in any way by the outcome of this
10 litigation.
11          Second, I must acknowledge awareness of the
12 possibility that the United States may take an interest in this
13 action before this Court, perhaps even seeking to become
14 involved as an interested party.  In that event, it would be
15 relevant for similar disclosure purposes to inform you that, in
16 connection with my service in the executive branch of the
17 Federal Government some years ago, I received a pension of
18 about $13,000 from the Federal Employees Retirement System, and
19 that is also fully vested.  Thus, likely the Verizon pension,
20 that interest would not be substantially affected by the
21 outcome of this litigation.
22          Although I do not have a pension from the City of New
23 York, I served as a state official during the late 1970s.  In
24 addition, I have an investment in Fidelity Mutual Bond fund,
25 the trading in which I do not control, that may contain New

1  York state bonds. Consequently, that investment also would not
2  be substantially affected by the outcome of this action.
3         Next, I have two law clerks who were associated with
4  firms representing some of the parties in this case, Richard
5  Sapola, with Cleary Gottlieb, and Elena Lynbaum, with Wilmer
6  Cutler, because there is a possibility that they may return to
7  these firms upon completion of their clerkship this fall. I
8  have made sure that they're not involved in any way in this
9  action and that they play no role in a substantive way. The
10 law clerk assigned to this case is here in front of me, Charles
11 Strout, who maybe assisted by two summer interns, Antonia
12 Miller and John Draxler, who are sitting to my right. Neither
13 of these, nor Mr. Strout, have any conflict that would
14 disqualify them from, working in this action.
15         Next, I turn to some threshold questions and issues
16 that emerged from my reading of the complaint, and the parties'
17 correspondence to date, and that are likely to guide the
18 litigation going forward. I realize that this proceeding was
19 scheduled for discussion of scheduling procedural and
20 housekeeping matters, so I will not open any substantive
21 subject debate at this time.
22         A starting point: Would the proposed merger result,
23 as the plaintiffs argue, in an increase in market concentration
24 in the mobile wireless communication services market that would
25 exceed the threshold of which merges are presumed to violate

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1   the antitrust laws?  If so, what measures do the proponents
 2   contemplate to overcome that presumption?
 3             Would any claimed deficiencies be sufficient to
 4   outweigh such anti-competitive facts to an extent by such
 5   efficiencies, recognizable and quantifiable, by objective
 6   measures and reliable processes?
 7             The proposed merger implicates a complex network of
 8   national, regional, and even local markets, some of them
 9   possibly overlapping for mobile telephone services.  Could
10   anti-competitive effects in one type of market be offset by
11   competitive games in other types of markets, and if so, which
12   measure would prevail in such analysis?
13             In some areas the competition for mobile telephone
14   services has been predominantly between T-Mobile and Sprint.
15   To what extent is this the case in rural areas, and what would
16   be the effect if Sprint were removed from these markets?
17   Plaintiffs assert that should the merger proceed, T-Mobile
18   would decommission more than 30,000 cell sites currently
19   operated by Sprint and also that Sprint retail stores would
20   close.
21             Would T-Mobile in effect, then acquire a monopoly
22   power in those geographic markets?  How likely is it that AT&T
23   or Verizon would step in to create a division there?  What
24   overall effect would the merger produce in the market for 5G
25   service?  And what has been the quantifiable effect of
```

1   competition among the four mobile services providers on prices

2   and quality?  On this point, I call your attention to what may

3   appear as a conflicting assertion in the complaint.  In

4   paragraph 78, the plaintiffs state that:

5            "The aggressive competition between the four companies

6   has resulted in falling prices and improved quality."

7            But in paragraph 33, the plaintiffs assert, that:

8            "Even with Sprint and T-Mobile pursuing competitive

9   and constructive strategies, price signaling has led to higher

10  prices for consumers."

11           Again, these are just a handful of what I call

12  threshold issues that are likely to be substantively involved

13  in this litigation, to which I will be paying close attention

14  as the matter proceeds.

15           Next, I have received the case management plan that

16  both parties submitted with conflicting timetables for certain

17  steps, in particular, the proposed trial.  One major open issue

18  that will determine when this trial may be able to proceed is

19  how long do you project it will be, because I may not have in

20  my calendar at this time an opening as long as -- in the length

21  in which you may propose.

22           So, let me first turn to that and ask the parties to

23  indicate notionally what is the length of trial that they

24  contemplate.  And I recognize that you have a difference in

25  opinion as to whether it should be in October or December.