# Ex. 9

**Redacted Amended Complaint
(excerpt)**

<u>Excerpt - Relevant Pages Only</u>

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK,<br>STATE OF CALIFORNIA,<br>STATE OF COLORADO,<br>STATE OF CONNECTICUT,<br>DISTRICT OF COLUMBIA,<br>STATE OF HAWAII,<br>STATE OF MARYLAND,<br>COMMONWEALTH OF MASSACHUSETTS,<br>STATE OF MICHIGAN,<br>STATE OF MINNESOTA,<br>STATE OF MISSISSIPPI,<br>STATE OF NEVADA,<br>COMMONWEALTH OF VIRGINIA, *and*<br>STATE OF WISCONSIN,<br><br>               *Plaintiffs*,<br><br>          v.<br><br>DEUTSCHE TELEKOM AG,<br>T-MOBILE US, INC.,<br>SPRINT CORPORATION, *and*<br>SOFTBANK GROUP CORP.,<br><br>               *Defendants*. | Case No. 1:19-cv-5434-VM |

## REDACTED AMENDED COMPLAINT

The States of New York, California, Colorado, Connecticut, Hawaii, Maryland, Michigan, Minnesota, Mississippi, Nevada, and Wisconsin, the Commonwealths of Massachusetts and Virginia, and the District of Columbia ("Plaintiff States"), acting by and through their respective Offices of their Attorneys General, bring this civil antitrust suit to enjoin the proposed acquisition of Sprint Corporation ("Sprint") by TMobile US, Inc. ("TMobile"), and to obtain equitable and other relief as appropriate. Plaintiff States allege as follows:

rolling out 5G service in the United States. Verizon has announced plans to launch 5G service in 20 U.S. cities in 2019 and AT&T claims to have already deployed 5G service in parts of 19 cities.

### C. Relevant Geographic Markets

38. Retail mobile wireless telecommunications services are marketed and sold nationwide through national advertisements. The Big Four MNOs market plans that allow for use throughout the United States without additional charges. The effects of the Merger will occur nationwide and it is therefore appropriate to identify the United States as a geographic area within which the Merger likely would substantially lessen competition for retail mobile wireless telecommunications services under Section 7 of the Clayton Act, 15 U.S.C. § 18.

39. Sprint and T-Mobile (as well as AT&T and Verizon) utilize networks that cover the vast majority of the U.S. population, advertise nationally, have nationally recognized brands, and offer pricing, plans, and devices that are generally available nationwide. This allows the carriers to take advantage of nationwide marketing and technology deployment.

40. The effect of the proposed merger can also be evaluated in local geographic markets, in addition to a nationwide market. Because most customers use mobile wireless telecommunications services at and near their workplaces and homes, and in areas where they travel frequently, customers typically purchase services from providers that offer and market services where they live, work, and travel on a regular basis. To address regional variations in demand, MNOs, including Sprint and T-Mobile, offer promotions targeted to individuals in specific geographic areas and compete on the basis of network quality in specific geographic areas. MNOs also operate, either directly or through affiliates, retail stores in specific geographic areas to compete for customers in those areas.

41.     The Cellular Market Areas ("CMAs") that the FCC has identified and used to license mobile wireless telecommunications service providers for certain spectrum bands approximate the areas within which customers have the same competitive choices.  In addition to a nationwide geographic market, individual CMAs in which Sprint and T-Mobile compete are relevant geographic markets under Section 7 of the Clayton Act, 15 U.S.C. § 18.

42.     Sprint and T-Mobile compete head-to-head in the nation's top 50 CMAs by revenue from retail mobile wireless telecommunications subscribers (the "Top 50 CMAs"), as well as in many other areas.  The Top 50 CMAs encompass about 50% of the U.S. population.  Each of the Top 50 CMAs, identified in Appendix A, represents an area in which the transaction likely would substantially lessen competition for retail mobile wireless telecommunications services and each constitutes a relevant geographic market under Section 7 of the Clayton Act, 15 U.S.C. § 18.  In addition, as described below, the nationwide effects of the transaction likely would substantially lessen competition in these local markets.

43.     In competing for customers in the Top 50 CMAs and other CMAs, the Big Four MNOs, including Sprint and T-Mobile, run price promotions, including in local areas where they have improved the quality of their networks.  Promotions may include discounts on cellular handsets or on the nationally advertised service plans to attract new customers.

44.     The Big Four MNOs compete in investment in infrastructure and innovation; they have all announced plans to deploy nationwide 5G networks with initial deployments in selected geographic areas.  Sprint and T-Mobile, for example, intend to initially launch 5G services in different cities.  For example, Sprint has decided to initially roll out 5G service in Chicago, Atlanta, Dallas-Fort Worth, Houston, Kansas City, Los Angeles, New York City, Phoenix, and

15

Washington, D.C. The selection of geographic areas in which to prioritize 5G deployment reflects one way in which the Big Four MNOs compete in local geographic areas.

**D.     The Merger Would Increase Concentration in the Markets for Retail Mobile Wireless Telecommunication Services**

45.     If consummated, the Merger would result in New T-Mobile having a combined share of over ▇% in the national geographic market for retail mobile wireless telecommunications services.[7] AT&T and Verizon would have shares of about ▇% and ▇% of the national geographic market for retail mobile wireless telecommunications, respectively.

46.     Concentration in relevant markets is typically measured by the Herfindahl Hirschman Index ("HHI").[8] Preliminary analysis shows that, if the Merger were consummated, the HHI in the national market would increase by more than ▇ points to over ▇ in the national market for retail mobile wireless telecommunications services.[9] According to the U.S. Department of Justice and Federal Trade Commission 2010 Horizontal Merger Guidelines (the "Horizontal Merger Guidelines"), the Merger is presumptively anticompetitive because the HHI in the national market will increase by more than 200 points and result in an HHI above 2,500.

---

[7] For all share and HHI calculations MVNO subscribers are attributed to the MNOs that provide the network access. This is done because, as explained above, MVNOs are dependent on MNOs for capacity.

[8] The HHI is calculated by squaring the market share of each firm competing in the market and then summing the resulting numbers. The HHI takes into account the relative size distribution of the firms in a market. It approaches zero when a market is occupied by a large number of firms of relatively equal size and reaches its maximum of 10,000 points when a market is controlled by a single firm. The HHI increases both as the number of firms in the market decreases and as the disparity in size between those firms increases.

[9] All share and HHI calculations are based on data received during the course of an investigation into the Merger and may be subject to change if additional data becomes available during litigation.

16

47. Concentration will increase to levels that render the Merger presumptively anticompetitive under the Horizontal Merger Guidelines even if the parties divest Boost Mobile, one of the brands under which Sprint sells prepaid service, as they have committed to the FCC that they will do. If Boost Mobile were divested and operated as a MVNO on the New T-Mobile network, the divestiture would not offset or limit the increase in concentration that will result from the Merger. If Boost Mobile were to operate on one of the other MNOs – AT&T or Verizon – New T-Mobile's combined share and the increase in HHI would still render the Merger presumptively anticompetitive.

48. The increase in concentration would be even more pronounced in many local geographic markets for mobile wireless telecommunications services. Based on preliminary market share data, New T-Mobile would have more than 50% share of retail mobile wireless telecommunications revenues in CMA 1, which covers the New York City metropolitan area. The HHI in CMA 1 would increase by more than ▓ points to nearly ▓ if the Merger were consummated. Under the Horizontal Merger Guidelines, the Merger is presumptively anticompetitive because the HHI in the CMA 1 market would increase by more than 200 points and result in an HHI above 2,500.

49. Based on preliminary market share data, New T-Mobile would have more than 50% share of retail mobile wireless telecommunications revenues in CMA 2, which covers several counties in California, including the greater Los Angeles area.[10] The HHI in CMA 2 would increase by approximately ▓ points to ▓ if the Merger were consummated. Under

---

[10] CMA 2 covers the California counties of Los Angeles, Orange, Riverside and San Bernardino. The full name of CMA 2 is Los Angeles-Long Beach/Anaheim-Santa Ana-Garden Grove/Riverside-San Bernardino-Ontario, CA.

17

57. Sprint and T-Mobile also compete head-to-head on network quality, pricing for cellular handsets, and add-ons offered through partnerships with companies like Netflix and Hulu.

58. New York City has historically been an area where Sprint and T-Mobile compete fiercely. Sprint has engaged in what T-Mobile employees referred to as "███████████████" by parking trucks with Sprint advertisements in front of T-Mobile stores in New York City. And both companies have engaged in promotions targeted at each other in New York. For example, after Sprint announced a campaign to attract more customers in the New York metropolitan area, T-Mobile employees wrote that "████████████████████████████████████████████████████████████████████████████████."

59. Sprint continues to compete on network quality in the New York metropolitan area. Sprint has upgraded radios and deployed small cells, which resulted in it announcing, in August 2018, that "Sprint is the most improved network in both the New York City and Long Island markets, and now has faster average download speeds than AT&T in the Big Apple."[11] Sprint's agreement with Altice USA, Inc. ("Altice"), pursuant to which it deployed 19,000 small cells on Altice infrastructure in less than a year, is largely responsible for the improvement in network quality. Sprint aggressively advertised its improved network quality, including on billboards.

60. T-Mobile and Sprint compete fiercely in many local markets, including markets in California such as those covering the cities of Los Angeles, San Francisco, Sacramento, San Diego, Bakersfield, and others. As part of its "████████████████" T-Mobile spent

---

[11] Press Release: *Sprint is Most Improved Network in the Big Apple and Faster than AT&T* (Aug. 16, 2018).