# CLEARY GOTTLIEB STEEN & HAMILTON LLP

NEW YORK
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

D: +1 202 974 1690
dgelfand@cgsh.com

July 30, 2019

The Honorable Robert W. Lehrburger
United States Magistrate Judge
500 Pearl Street
New York, NY 10007

Re: *State of New York v. Deutsche Telekom et al.*, 1:19-cv-05434-VM-RWL

Dear Judge Lehrburger:

I write on behalf of Defendants in response to Plaintiffs' July 25, 2019 Letter Motion for Pre-Motion Discovery Conference (1 of 3). Plaintiffs' letter overstates the scope of what is currently in dispute. Defendants have already agreed to comply with some of the requests noted in Plaintiffs' letter, and Plaintiffs mischaracterize Defendants' position with respect to others. Some of the points on which Plaintiffs have moved to compel were not even discussed meaningfully in the parties' meet and confer calls, so it is possible that further discussions between the parties could have led to further agreements.

Defendants are not taking the position that "Plaintiff States are entitled to little or no document discovery." Plaintiffs' Letter at 1. In fact, Defendants have cooperated with Plaintiffs and agreed to produce substantial volumes of documents. Defendants' efforts in this regard have been made more difficult by the overly broad scope of Plaintiffs' initial requests for production, which among other things included requests that Defendants update, to the date of trial, each of the productions they made to the DOJ, the FCC, the various states, and any other agency or body that investigated the transaction over the past fifteen months.

In addition to the substantial volume of new documents Defendants are producing, Plaintiffs already have in their possession a massive investigative record that they compiled over the past fifteen months largely through their coordination with an investigation by the DOJ. This includes 1.8 million documents from 44 T-Mobile and Deutsche Telekom custodians, 2.1 million documents from 53 Sprint and SoftBank custodians, 25 days of deposition testimony from Defendants' executives and engineers, hundreds of pages of white papers and submissions to the investigating agencies, more than three years of data from the parties, and what appear to be more than 100,000 documents they obtained from third parties. "[V]oluminous prior productions make it considerably more likely that further discovery will be


Hon. Robert W. Lehrburger
July 30, 2019

duplicative" and are a "useful reference for estimating the burden that will be imposed by requiring [defendants] to repeat procedures similar to those that resulted in the prior production." *Lawrence E. Jaffee Pension Plan v. Household Intern'l, Inc.*, No. 02 C 5893, 2006 WL 3445742, *5 (N.D. Ill. Nov. 22, 2006) (affirming magistrate's denial of additional wide-scale discovery into time periods not covered by prior investigatory productions).

Plaintiffs' motion should be denied for the reasons discussed below.

**(1) Communications Regarding Proposed Remedies or Agreements with DISH/Other Third Parties (All Defendants).** Plaintiffs seek additional "(1) internal substantive communications discussing the USDOJ, FCC and DISH commitments, and (2) external substantive communications with financial advisors, third parties or other Defendants." Plaintiffs speculate that such communications "may reveal that certain operational terms of their agreements with DISH are designed to hobble DISH as a meaningful competitor." But on July 19, T-Mobile offered to produce non-privileged documents on the subject of DISH as a competitor going forward from the files of the T-Mobile senior executives responsible for the DISH transaction. This production would cover internal and external communications related to DISH's competitiveness and would include the very types of substantive documents that Plaintiffs speculate their broader request might reveal. It would also cover communications with financial advisors and other third parties, including Sprint. T-Mobile has also agreed to produce relevant board materials and drafting history for the divestiture documents.

Sprint, for its part, was not closely involved in the negotiations other than providing needed information, and Plaintiffs have provided no basis for why it should be put to additional the burden on this topic, particularly considering that Sprint produced voluminous documents relating to Sprint's prepaid business as part of the DOJ and state AG investigation. Nevertheless, Sprint has produced to Plaintiffs documents provided to the DOJ in response to a CID request surrounding potential divestiture commitments. Sprint also has agreed to produce substantive communications with the FCC, the DOJ, and DISH regarding the potential DISH transaction, briefing materials provided to Sprint's Board of Directors that relate to the DISH transaction, drafting history for divestiture-related deal documents, and any board minutes pertaining to the DISH transaction. And Sprint and SoftBank have both agreed to search the files of Marcelo Claure, SoftBank's Chief Operating Officer and the Executive Chairman of Sprint. A search of Mr. Claure's files is sufficient because, to the extent anyone within Sprint or SoftBank had material comments or other input regarding proposed remedies for the transaction, Mr. Claure would necessarily have received them.

**(2) Documents Regarding Competition in Local Markets (Sprint and T-Mobile).** Plaintiffs acknowledge that Defendants have offered to search the files of six custodians using agreed search terms. These custodians are the senior executives and other individuals who oversee local marketing. Moreover, as we have informed Plaintiffs, both Sprint and T-Mobile make their marketing decisions on a nationwide basis. Nonetheless, Plaintiffs ask that more than a dozen additional custodians' files be searched, asserting that the custodians already offered "are unlikely to have sufficient documents focused on local-market competition." Plaintiffs offer no basis for this assertion, which is speculative and should not be credited. *See, e.g., Fort Worth Employees' Retirement Fund v. J.P. Morgan & Co.*, 297 F.R.D. 99, 107 (2013) (denying motion to compel productions from additional custodians because plaintiffs had not met

Hon. Robert W. Lehrburger
July 30, 2019

burden to "demonstrate that the additional requested custodians would provide *unique* relevant information not already obtained"). Notably, none of the additional custodians Plaintiffs seek were custodians for the DOJ or FCC investigations.

**(3) Spectrum and MVNO Agreements Since June 2018 (Sprint and T-Mobile).** Defendants proposed to conduct searches for documents about spectrum auctions on July 10 and believe Plaintiffs have agreed. Otherwise, although this issue was not addressed during the parties' meet and confer calls, T-Mobile and Sprint will produce the requested MVNO agreements. But Plaintiffs provide no basis – for example, by way of citation to one of the millions of documents they already have – for requiring Defendants to undertake expensive additional searches for documents "about" such agreements, which at a minimum would capture a large volume of ordinary-course materials of no relevance.

**(4) Communications with Nielsen (Sprint and T-Mobile).** This issue also was not addressed in the parties' meet and confer calls. Plaintiffs seek "Nielsen data" and all documents about Nielsen data on which they say Defendants rely in certain economic models submitted during the investigatory phase of the case. As to the data, the parties have agreed to the scope of their data productions in this case and, in any event, to the extent Defendants' experts rely on any data not captured by that agreement or not otherwise produced, that data will be produced as required with the expert disclosures. As to documents, T-Mobile is willing to produce such ordinary-course documents from the files of Mark Roettgering, the individual at T-Mobile with overall responsibility for Nielsen data. Sprint is willing to produce such ordinary-course documents from the files of John Saw, Sprint's Chief Technology Officer, and Dow Draper, Sprint's Chief Commercial Officer, whose organizations utilize Nielsen data.

**(5) Documents Responsive to Requests 27-44 (Sprint) and 28-45 (T-Mobile).** In one paragraph of their letter, Plaintiffs ask the Court to compel production in response to 18 different requests directed to each of T-Mobile and Sprint. These requests overlap with requests that were previously made during the merger investigation and to which the parties responded with large volumes of documents and data. Defendants have objected to this sort of unfocused request for a "refresh" of prior productions.

Curiously, a number of the requests included in this category seek only data. This includes requests 28-30, 33, and 40 to T-Mobile and the corresponding requests to Sprint. As noted above, the parties already agreed to the scope of Defendants' production of data, so Defendants understand these requests are not actually in dispute.

To the extent documents are sought in the other requests, it is through ill-defined requests for "all Documents" or "any Documents" or "Documents and Communications" *concerning* the requested data. But production of the many documents that "concern" the data, such as emails that make reference to particular data, would be a highly burdensome undertaking and would be disproportionate to the needs of the case, particularly given the material Plaintiffs already have. In any event, Plaintiffs have not shown that they need additional documents about these data or topics or even clearly stated what they seek.

We look forward to discussing these issues with the Court at the August 1 conference.

Hon. Robert W. Lehrburger
July 30, 2019

                                                        Respectfully submitted,

                                                        David I. Gelfand

cc (via ECF): All counsel of record