

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
28 LIBERTY STREET
NEW YORK, NEW YORK 10005

LETITIA JAMES
ATTORNEY GENERAL

JEREMY R. KASHA
ASSISTANT ATTORNEY GENERAL

July 30, 2019

**By ECF**

Hon. Robert W. Lehrburger
United States Magistrate Judge
500 Pearl Street
New York, NY 10007-1312

Re:   *State of New York et al. v. Deutsche Telekom et al.*, 1:19-cv-05434-VM
      Opposition to Defendants' Letter-Motion for Rule 37.2 Discovery Conference (Dkt # 139)

Dear Magistrate Judge Lehrburger,

Defendants' motion is premature and baseless. Defendants' first issue is premature because it is properly the subject of expert discovery, which has not yet begun. The second and third issues are inappropriate because Defendants seek (i) discovery of privileged communications among law enforcement officials, and (ii) information – irrelevant to any claim or defense in this action – about how Plaintiff States allocate resources to litigate a large merger case against deep-pocketed adversaries. The Court should deny the motion and issue a protective order in Plaintiffs' favor.[1]

**(1)   Market Share and Concentration Calculations.** Plaintiffs have already produced all responsive documents (in particular, data) concerning the market share and concentration calculations in the amended complaint. Ex. 1 at 4. We specifically informed Defendants that "there are no existing, non-privileged documents setting forth the calculations that you seek." *Id.* at 4. Since Plaintiffs' experts made these market share calculations using the data that has already been produced, it is properly the subject of expert discovery – which has not yet begun. Ex. 2 at ¶ 9.B.

Defendants nonetheless insist on production of those calculations now, instead of waiting for expert discovery. Moreover, they suggest that Plaintiffs are obliged to create a document for them that does not already exist. Both contentions are without legal support.

---

[1] Defendants also served a Rule 30(b)(6) Notice on Plaintiffs New York and California, which – like some of the issues on this motion – is an improper effort to delve into the privileged inner workings of law enforcement agencies. We are meeting-and-conferring with Defendants now. If this is not also resolved by the parties, or at this week's hearing, Plaintiffs will move for a protective order or other relief, pursuant to Your Honor's Individual Practices and the Local Rules.

First, Defendants' demand is premature. *Williams v. Dow Chem. Co.*, 2004 WL 1348932, at *19 (S.D.N.Y. June 16, 2004) ("premature to expect an interrogatory response to reflect expert views … when expert discovery is not yet under way."); *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, 2006 WL 1520227, at *1 (S.D.N.Y. June 1, 2006) (damage calculations that "require expert testimony" properly disclosed in later expert discovery, even though damages estimates are otherwise revealed during initial disclosures) (citing 6 James W. Moore, Moore's Federal Practice § 26.22[4][c][ii] (3d ed. 1997)); *See McKellips v. Kumho Tire Co.*, 305 F.R.D. 655, 681 (D. Kan. 2015).

Second, the Court cannot "compel production of what does not exist." *Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A.*, 2000 WL 521341, at *3 (S.D.N.Y. May 1, 2000). "It is basic that … a party is not required to create documents meeting the document requests, only to produce documents already in existence." *Hallmark v. Cohen & Slamowitz, LLP*, 302 F.R.D. 295, 299 (W.D.N.Y. 2014).[2]

The cases cited by Defendants do not support their position. *Koumalis v. Indep. Fin. Mktg. Group,* 295 F.R.D. 28 (E.D.N.Y. 2013), stands for the uncontroversial proposition that one cannot *refuse* to produce documents on the basis of privilege after putting them at issue. *Id.* at 40. However, Plaintiffs here do not refuse to provide the information but, rather, maintain that it is the subject of expert discovery which has not yet begun. Ex. 1 at 4. The other case cited by Defendants, *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000), similarly addresses only the generalities of privilege waiver and the "sword and shield" doctrine (albeit in a criminal context). That case is inapposite since Plaintiffs are not refusing to provide the information, but only insisting that it is appropriate for expert discovery. None of Defendants' authorities address the issue at hand.

**(2)     Communications Between Attorneys General.**  Defendants argue that some communications between the Attorneys General themselves are not privileged, although they acknowledge that communications among the assistant attorneys general and staff are privileged.

To begin, Defendants misstate Plaintiffs' position. *See* Defs. Letter Motion at 2 (no mention of common law privileges asserted by Plaintiffs); Ex. 1 at 3-4. Plaintiffs specifically informed counsel that they are "not withholding those communications solely on the basis of the … Agreement." Ex. 1 at 4. Rather, Plaintiffs rely on common law privileges, which were memorialized in the Agreement. *Id.; see, e.g., In re City of New York*, 607 F.3d 923 (2d Cir. 2010) (discussing law enforcement privilege). Plaintiffs should prevail on the basis of this privilege assertion alone. Defendants do not address these privileges. Instead, they rely on a misreading of the Agreement.

Even if, *arguendo,* there were no applicable privileges and the language in the Agreement were controlling, Defendants' argument still fails. The Agreement specifically exempts communications between "counsel of any Office of a State Attorney General (or persons employed by such Office)." Ex. 3 at 3-4. Defendants argue that "[t]he Attorney General of a State is neither her own counsel, nor employed by herself." Defs. Letter Motion at 2. This is wrong, since the operative language is not that she must be "her own counsel" but, rather, that she be "counsel of any Office of a State Attorney General," which she

---

[2] Defendants served a document request instead of an interrogatory. This may be because Defendants seek to avoid using one of the 10 interrogatories that the parties agreed to as a limit, as reflected in the CMO. See Ex. 2 at ¶8.C. In any event, it would also be premature as an interrogatory. *Williams*, 2004 WL 1348932 at *19.

clearly is. *See, e.g.*, N.Y. Exec. Law § 63(1) (New York Attorney General's responsibilities include all legal business of the State "which requires the services of attorney or counsel"). In any event, public officers, such as the attorney general, are "employees" under the law for certain purposes. *See, e.g.*, N.Y. Pub. Off. Law § 19 ("As used in this section, … the term 'employee' shall mean any person holding a position *by election*, appointment or employment in the service of the state.") (emphasis added). Similarly, the California Attorney General is an employee for certain purposes. *See* Cal. Gov. Code § 20028(a).

*Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191 (N.Y. 2018), supports Plaintiffs – not Defendants. *Id.* at 198 (contractual language should be construed "in light of the obligation of as a whole and the intention of the parties manifest thereby.") Defendants have no facts or authority to support their theory that the Agreement is intended to establish *less* protection for the Attorneys General themselves than for other lawyers and staff in their offices. The only non-privileged communications would be those (if there are any) that involve third parties – and those communications (if they exist) have been produced.

**(3)** **Financial Agreements.** Defendants are not entitled to discovery of the financial arrangements of public law enforcement agencies. They do not bear on the elements of Section 7, and they are irrelevant to any claim or defense in this action. And Defendants err to argue that it bears on "credibility," since no Attorney General personnel will be testifying. Multistate litigations are common, and no court has ever allowed a defendant to inquire into how they internally assign their resources.

The authorities cited by Defendants are far afield, including no antitrust cases, and no cases in which a state attorney general was plaintiff in a law enforcement role. *Kaplan v. S.A.C. Capital Advisors*, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015), was about financial arrangements of *class counsel,* not attorneys general, and the court in that case denied discovery. *Id.* at *5 ("defendants did not show the requested documents are relevant to any party's claim or defense.") *Concepcion v. The City of New York*, 2006 WL 2254987 (S.D.N.Y. Aug. 4, 2006), was a wrongful arrest case in which New York City was a defendant, and the plaintiff, a political protestor, alleged that her arrest was motivated by financial arrangements that, allegedly, led to her unlawful arrest during a political convention. *Id.* at *4. *Brocklesby v. United States*, 767 F.2d 1288 (9th Cir. 1985), does not even address discoverability, but rather the admissibility of an indemnification agreement that already had been produced. *Id.* at 1292-93.

*Powerlift, Inc. v. Mark Industries, Inc.*, 1987 WL 12177 (N.D. Ill. June 5, 1987), did not involve any public entities as parties, but rather was a wrongful dealership-termination suit, in which plaintiff asserted that a third party witness may have been financially induced to cooperate with defendant. Plaintiffs cite no authority extending such a holding from a commercial dispute over a dealership to a law enforcement antitrust action. Finally, *United States v. Cathcart*, 2009 WL 1764642 (N.D. Cal. June 18, 2009), was premised on the fact that a fee-payment arrangement may have biased a particular witness. *Id.* at *2-3. Defendants have not and cannot make a plausible showing that some particular witness here is biased by any fee arrangements, particularly because no State representative will be testifying. The Court should disallow this fishing-expedition.[3]

---

[3] In an attempt to resolve this issue, Plaintiffs have represented to Defendants that their "financing of this litigation involves no private funds," and that "[b]udgets for state attorneys general are a matter of public record." Ex. 1 at 5. This should have resolved the issue, but Defendants nevertheless persist with this baseless motion.

Respectfully,

Jeremy R. Kasha
Assistant Attorney General
Antitrust Bureau