**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*<br><br>                              *Plaintiffs*,<br><br>          v.<br><br>DEUTSCHE TELEKOM AG, *et al.*<br><br>                              *Defendants*. | Case No. 1:19-cv-5434 (VM) (RWL)<br><br>ECF Case |

**ANSWER OF DEFENDANTS T-MOBILE US, INC. AND DEUTSCHE TELEKOM AG
TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendants T-Mobile US, Inc. ("T-Mobile") and Deutsche Telekom AG (collectively, "Defendants") hereby answer the second amended complaint filed on August 14, 2019 (the "Second Amended Complaint") by Plaintiffs State of New York, State of California, State of Colorado, State of Connecticut, District of Columbia, State of Hawaii, State of Maryland, Commonwealth of Massachusetts, State of Michigan, State of Minnesota, State of Mississippi, State of Nevada, State of Oregon, State of Texas, Commonwealth of Virginia, and State of Wisconsin ("Plaintiffs").

## PRELIMINARY STATEMENT

The merger of T-Mobile and Sprint Corporation ("Sprint") will create a world-leading nationwide mobile wireless network for the benefit of all consumers throughout the United States. The New T-Mobile network will be far better and faster, delivering more advanced mobile wireless services to more Americans at lower prices than any network either Sprint or T-Mobile could deploy on its own. These lower prices, in turn, will drive more intense competition, including with the industry's dominant carriers, AT&T and Verizon, which will benefit all consumers. The merger will enable New T-Mobile to deliver the nation's first robust,

nationwide 5G service.  It will create a fierce new competitor for in-home broadband service, challenging cable monopolies around the country.  It will extend wireless service to tens of thousands of rural communities that have been left behind in the nation's digital divide – communities that Plaintiffs entirely ignore in their Second Amended Complaint.  In short, the merger will benefit Americans everywhere.

This is not just Defendants' point of view.  The Federal Communications Commission ("FCC") is the expert agency that regulates the wireless industry, enforces the country's communications laws, and ensures the competitive and public interest benefits of telecommunications transactions.  After what the FCC Chairman has described as "one of the most exhaustive merger reviews in Commission history," he and two other FCC Commissioners have voiced their support for the merger.  On August 14, 2019, the Chairman issued a statement saying, "the evidence conclusively demonstrates that this transaction will bring fast 5G wireless service to many more Americans and help close the digital divide in rural areas.  Moreover, with the conditions included in this draft Order, the merger will promote robust competition in mobile broadband, put critical mid-band spectrum to use, and bring new competition to the fixed broadband market."

The FCC secured legally binding commitments from the parties to accelerate their promised business plan, requiring New T-Mobile to deploy a 5G network covering at least 97% of the country's population within three years and 99% of the population within six years, to guarantee much faster speeds, to roll out in-home broadband service, not to raise prices for at least three years pending rollout of the new network, and to divest Sprint's Boost Mobile business.  Until recently, Plaintiffs had acknowledged that the New T-Mobile network would be "fabulous" for customers, but they doubted that New T-Mobile would actually build it.  New T-

Mobile's 5G build plan is now a verifiable and legally-binding commitment backed by billions of dollars of penalties for failure to perform.

Plaintiffs were right that New T-Mobile's network will be a positive and exciting development for consumers.  As FCC Chairman Pai said in a May 20, 2019 statement:  "The construction of this network and delivery of such high-speed wireless services to the vast majority of Americans would substantially benefit consumers and our country as a whole . . . . This is a unique opportunity to speed up the deployment of 5G throughout the United States and bring much faster mobile broadband to rural Americans.  We should seize this opportunity." Rather than seize the opportunity, however, the Attorneys General of 15 states and the District of Columbia now ask the Court to deprive consumers in their own states and in the 35 others that have not challenged the merger of the benefits of New T-Mobile's 5G network.  In doing so, Plaintiffs' Second Amended Complaint gets the facts and the law wrong.

Plaintiffs reject engineering and physics realities, which show that the combination of Sprint's and T-Mobile's complementary spectrum and assets will create a far better network with much greater capacity at lower cost than either could do separately.  On its own, T-Mobile faces increasing costs to create capacity because of its limited quantity of mid-band wireless spectrum, which allows for deep network coverage.  This, in turn, limits its ability to drive lower prices. On its own, Sprint faces coverage gaps because of its lack of low-band wireless spectrum, which allows for broad network coverage.  This, in turn, limits its ability to attract customers.  By combining these spectrum and network assets in a single portfolio and using the right spectrum for the right job, more capacity can be generated at much lower cost.  In short, each company provides what the other needs, creating a much more efficient, and therefore more competitive, firm.  Plaintiffs overlook the economic realities that there will be powerful incentives for New T-

Mobile to monetize this dramatically increased capacity, by lowering prices to attract customers from Verizon, AT&T, Comcast, and others, sparking a new round of intense competition.

Plaintiffs also ignore major players in the wireless marketplace – including cable companies and MVNOs that compete aggressively and have millions of customers – as if they are irrelevant to competition. And they fail to understand market realities about the changing dynamics of the industry and the innovation that fuels its development, instead relying on a fantasy that competition between T-Mobile and Sprint alone is somehow critical in the 5G world. Plaintiffs are dwelling in the past while the rest of the world is building super highways.

New T-Mobile will build that super highway for wireless services. The combination of Sprint's and T-Mobile's complementary assets will dramatically increase capacity of the network – meaning more lanes to carry more wireless traffic for many more customers. All consumers want faster and better wireless service, regardless of income level, and New T-Mobile's 5G network will provide it at levels beyond what they ever imagined *and* at lower prices. Contrary to Plaintiffs' claims, consumers will *save* billions of dollars as a result of the merger. And contrary to Plaintiffs' assertion, low-income consumers are the most likely to benefit from the merger because they often rely on mobile wireless as their only form of internet connection.

Plaintiffs, not Defendants, carry the burden to prove that the merger will be anticompetitive and will hurt consumers by causing higher prices. They cannot do so because this merger will generate *more,* not less, competition. As the Merger Guidelines make clear but Plaintiffs ignore, a primary benefit of mergers like this one "is their potential to generate significant efficiencies and thus enhance the merged firm's ability and incentive to compete, which may result in lower prices, improved quality, enhanced service, or new products. For example, merger-generated efficiencies may enhance competition by permitting two ineffective

4

competitors to form a more effective competitor, e.g., by combining complementary assets."
U.S. Department of Justice and Federal Trade Commission Horizontal Merger Guidelines, §10
(2010).  This is just such a merger, and without it millions of American consumers will be left
behind in the 5G era to struggle with "just ok" wireless and broadband services at higher prices.

The Second Amended Complaint contains incorrect, misleading, and
unsupportable allegations addressed in detail below.  In addition to the answers to individual
paragraphs below, a few important responsive points include:

- Plaintiffs dismiss the evidence that the combined network will operate at lower cost than the parties' standalone networks while generating dramatically greater capacity and performance as "speculative" and "non-verifiable."  ¶¶ 96-97.  In fact, as the FCC has confirmed, the performance of cellular networks is constantly being measured through verifiable metrics and is not "speculation."  The number and location of towers and radios is a matter of counting, not "speculation."  And the FCC has put in place precise, verifiable metrics that the New T-Mobile network will have to meet.

- In an attempt to generate a presumption that the merger will create anticompetitive effects, Plaintiffs have gerrymandered their market share calculations by disregarding important players in that market such as MVNOs and excluding business customers.  ¶ 36.  But there is no factual or logical basis for these exclusions, and absent those artificial carve-outs, Plaintiffs cannot show that national shares are high enough to support such a presumption.

- Plaintiffs wrongly assert that there are relevant local geographic markets.  ¶ 42.  To the contrary, wireless carriers compete nationwide: they have nationwide networks, they have national pricing, and they advertise prices across the country.  Plaintiffs hang their hat on an allegation that wireless carriers run local promotions, ¶ 45, but these promotions represent a small fraction of average pricing and cannot carry Plaintiffs' burden of proving local markets.

- Contrary to Plaintiffs' repeated claims, Sprint is not likely to play a meaningful competitive role as a standalone company in the years to come.  ¶¶ 69-75.  Sprint has steadily *lost* subscribers, its free cash flow has been overwhelmingly negative, its market share has steadily declined since 2013, and it is struggling with its huge debt load and interest expense that in the last year was greater than its operating income.  Plaintiffs' prediction that Sprint would abruptly reverse this long trend and emerge as a vigorous standalone competitor is nothing more than wishful thinking.

For these reasons and others described below and to be presented at trial, Plaintiffs' claims are without merit.

## ANSWERS TO INDIVIDUAL PARAGRAPHS

In response to the Second Amended Complaint filed by the Plaintiffs, Defendants answer as follows. Each paragraph below corresponds to the same-numbered paragraph in the Second Amended Complaint. Defendants deny all allegations in the Second Amended Complaint, whether express or implied, that are not specifically admitted below. Defendants deny that the headings and footnotes contained in the Second Amended Complaint constitute allegations of fact, and Defendants deny them to the extent that they are considered as such. Defendants further expressly deny that the Plaintiffs are entitled to the requested, or any other, relief. Defendants reserve the right to amend this Answer. Defendants also state that, except to the extent indicated below, they lack knowledge or information sufficient to form a belief about the truth or falsity of allegations that relate to the actions, statements, or intent of Sprint or Softbank Group ("Softbank").

1.     Defendants admit the allegations of Paragraph 1, but note that there are postpaid plans that do not require a credit check. This merger will benefit all consumers of mobile wireless telecommunications services.

2.     Defendants admit that mobile wireless telecommunications services have become vital in the everyday lives of people and that mobile wireless telecommunications services have improved in quality and price over time. Technological innovation has been a major factor in these improvements. Past mergers, such as T-Mobile's acquisition of MetroPCS, have also played an important role, driving economies of scale, lower costs, and more efficient provision of services, thus enabling lower prices for consumers. Defendants also admit that competition

for mobile wireless telecommunications services is essential to ensure continued innovation and low prices for American consumers. The merger of T-Mobile and Sprint is procompetitive and will result in further benefits to the everyday lives of consumers. The merger will enable network improvements that will make the industry more competitive still, and these benefits cannot be achieved in the absence of the merger. The allegations in the second, third and fourth sentences in Paragraph 2 characterize documents that are the best evidence of their contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize the documents, they are denied. Defendants lack sufficient information to form a view as to the remainder of the allegations in Paragraph 2 and on that basis deny those allegations.

3.      Defendants admit that T-Mobile and Sprint are the third and fourth largest mobile network operators in the United States, but deny that either T-Mobile or Sprint dominate any aspect of mobile wireless telecommunications services. Defendants admit that only AT&T, Sprint, T-Mobile, and Verizon presently are the MNOs with networks that cover more than 90% of the United States population, but Defendants note that Sprint is forced to rely on roaming agreements to supplement its limited geographic coverage. Defendants admit that Verizon and AT&T are dominant in the provision of mobile wireless telecommunications services in the United States. Sprint and T-Mobile are much smaller competitors than AT&T and Verizon and have failed to win significant share from those larger competitors in recent years. In fact, Sprint has lost significant share in recent years. Defendants admit that approximately 80 million and 55 million devices connect to the T-Mobile and Sprint networks respectively, but deny that each device represents a T-Mobile or Sprint customer. Defendants otherwise deny the allegations in Paragraph 3.

4.     The allegations in Paragraph 4 characterize documents that are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the documents, they are denied.  Defendants admit that T-Mobile previously attempted to merge with AT&T and that Sprint and T-Mobile contemplated a merger in 2014.  T-Mobile admits that Deutsche Telekom AG is its controlling shareholder.  Defendants otherwise deny the allegations in Paragraph 4.

5.     Defendants admit the first sentence in Paragraph 5.  Defendants admit that after the merger is consummated, Sprint will no longer operate as an independent wireless carrier.  Defendants otherwise deny the allegations in Paragraph 5.

6.     The allegations in Paragraph 6 characterize the deposition transcript of John Legere, which is the best evidence of its contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the transcript, they are denied.  Defendants otherwise deny the allegations in Paragraph 6.

7.     Defendants deny the allegations in Paragraph 7 and note that there are postpaid plans that do not require a credit check.

8.     Defendants deny that the merger will lessen competition, deny that any commitments are needed to address harm to competition, and therefore deny the last sentence of Paragraph 8.  Defendants note that on August 14, 2019, the FCC Chairman circulated a draft Order approving the merger.  The FCC Chairman stated:  "[W]ith the conditions included in this draft Order, the merger will promote robust competition in mobile broadband, put critical mid-band spectrum to use, and bring new competition to the fixed broadband market."  Defendants otherwise admit the allegations of Paragraph 8, though also note that on May 20, 2019, FCC

Commissioner O'Reilly stated, "I am inclined to support T-Mobile/Sprint proposed merger, even if not convinced of the need for all the newly announced conditions being proposed."

9.      Defendants admit that to resolve its investigation of the merger, the U.S. Department of Justice, joined by the States of Kansas, Nebraska, Ohio, Oklahoma, and South Dakota, filed a Complaint, Stipulation and Order, and Proposed Final Judgment, on July 26, 2019, amended to include the State of Louisiana on August 15, 2019.  Defendants did not participate in the drafting of the Complaint and have not and will not admit the allegations contained therein, because the case was simultaneously settled by consent order.  In filing the action, the Assistant Attorney General of the Justice Department's Antitrust Division stated: "With this merger and accompanying divestiture, we are expanding output significantly by ensuring that large amounts of currently unused or underused spectrum are made available to American consumers in the form of high quality 5G networks."  Defendants admit that the Stipulation and Order and Proposed Final Judgment lay out divestitures to DISH Network Corporation ("DISH") and other commitments provided by Defendants to settle the case. Defendants admit the proposed settlement is subject to public comment under the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, commonly referred to as the Tunney Act. Defendants otherwise deny the allegations in Paragraph 9.

10.      Defendants deny that the effect of T-Mobile's merger with Sprint may be substantially to lessen competition.  In fact, the merger will increase competition.  The remainder of the allegations in Paragraph 10 are requests for relief or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

11.      Defendants admit that Plaintiffs purport to take the actions stated in Paragraph 11. Defendants deny that they have violated or will violate Section 7 of the Clayton Act, and deny

that Plaintiffs are entitled to relief of any kind.  To the extent that Paragraph 11 of the Second Amended Complaint asserts any additional factual allegations, Defendants deny them.

12.     The allegations in Paragraph 12 are legal conclusions and therefore do not require a response.  To the extent a response is required, Defendants admit the allegations in Paragraph 12.

13.     The allegation in Paragraph 13 states a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 13.

14.     The allegation in Paragraph 14 states a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants admit the allegation in Paragraph 14.

15.     Paragraph 15 states legal conclusions and therefore no response is required.  To the extent a response is required, Defendants admit the allegations in Paragraph 15 to the extent they describe the merger agreement at issue in this case.  The Defendants otherwise admit the allegations in Paragraph 15.

16.     Defendants deny the allegations in Paragraph 16.

17.     Defendants admit that T-Mobile is a corporation organized and existing under the laws of the State of Delaware with its headquarters in Bellevue, Washington.  Defendants deny that T-Mobile is one of the world's largest providers of communications services.  Defendants admit that T-Mobile is the third-largest mobile wireless telecommunications service provider in the United States, as measured by subscribers, but note that it is approximately half the size of each of Verizon and AT&T.  Defendants admit that the amount of devices that use the capacity of T-Mobile's network has grown from approximately 33 million in 2010 to nearly 80 million in

2018, but deny that all of those devices represent T-Mobile customers and note that in a similar period the amount of devices connected to the Verizon and AT&T networks has grown by over 115 million.  Defendants admit that T-Mobile provides mobile wireless telecommunications services in all 50 states, the District of Columbia, and Puerto Rico.  Defendants admit that T-Mobile provides mobile wireless telecommunications services under the T-Mobile and Metro by T-Mobile (formerly MetroPCS) brand names.  Defendants admit that T-Mobile transacts business in New York, has offices in New York, and had $43.3 billion in revenues in 2018.

18.     Defendants admit the allegations in Paragraph 18.

19.     Defendants admit the first sentence of Paragraph 19.  Defendants admit that Sprint is the fourth-largest wireless carrier in the United States.  Defendants admit that approximately 55 million devices connected to the Sprint network at the end of 2018, but deny that all of those devices represent Sprint customers.  Defendants admit that Sprint is an interexchange long-distance wireline carrier and a Tier 1 Internet backbone provider. Defendants admit the third and fourth sentences in Paragraph 19.  Defendants otherwise deny the allegations in Paragraph 19.

20.     The allegations in Paragraph 20 characterize statements that are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the statements, they are denied.  Defendants deny the remaining allegations in Paragraph 20.

21.     Defendants admit the allegations in Paragraph 21.

22.     To the extent the allegations in Paragraph 22 characterize the Business Combination Agreement, that is the best evidence of its contents and, therefore, no response is

required.  To the extent the allegations differ from or mischaracterize the Business Combination

Agreement, they are denied.  Defendants admit the other allegations in Paragraph 22.

23.     The allegations in Paragraph 23 characterize the Commitment Letter that is the

best evidence of its contents and, therefore, no response is required.  To the extent the allegations

differ from or mischaracterize the Commitment Letter, they are denied.

24.     Defendants admit the third and fourth sentences of Paragraph 24.  Defendants

otherwise deny the allegations in Paragraph 24.

25.     Defendants deny the allegations in Paragraph 25.

26.     Defendants admit that New T-Mobile plans to decommission a number of cell

sites, because such cell sites are redundant.  The decommissioning of these sites will not result in

a reduction of capacity or service.  In addition, thousands of legacy Sprint sites will be retained

and deployed with both Sprint and T-Mobile spectrum in a manner that multiplies capacity

relative to the sum of the standalone networks.  Sprint spectrum will also be deployed on T-

Mobile sites.  Furthermore, in accordance with the Proposed Final Judgment entered as part of

the U.S. Department of Justice's approval of the merger, Defendants "shall make all Cell Sites

Decommissioned by Divesting Defendants within five (5) years of the closing of the divestiture

of the Prepaid Assets, which shall not be fewer than 20,000 Cell Sites, available to Acquiring

Defendant immediately after such Decommissioning."  T-Mobile admits that it plans to close

certain redundant and therefore unnecessary retail stores after the merger is consummated,

thereby combining sales into a single retail location, reducing lease and other costs.  Defendants

note that retained stores will have more employees due to greater sales volume.  These savings

will reduce New T-Mobile's costs and enable New T-Mobile to offer lower pricing to its

customers.  Additionally, in accordance with the Proposed Final Judgment, Defendants "shall

make all assignable or transferrable Retail Locations Decommissioned by Divesting Defendants within five (5) years of the closing of the divestiture of the Prepaid Assets, which will not be fewer than four hundred (400) Retail Locations, available to Acquiring Defendant immediately after such Decommissioning." Defendants otherwise deny the allegations in Paragraph 26.

27.     Defendants admit that Sprint and T-Mobile entered into a limited roaming agreement. That roaming agreement is limited in scope and duration. Defendants admit the last sentence in Paragraph 27 but note the agreement is set to expire four years after the abandonment of the merger.

28.     The allegations in Paragraph 28 are legal conclusions and therefore do not require a response. To the extent a response is required, Defendants deny them.

29.     Defendants admit the allegations in Paragraph 29, except deny that Mobile wireless telecommunications services must include "traditional voice calling" as a feature.

30.     Defendants admit that many customers "highly value" mobility, that access to mobile wireless telecommunications is important to many individuals in the United States, and that mobile wireless telecommunications services support an ecosystem of apps and programs that have been estimated to have had an economic impact of more than $500 billion for the United States economy in 2018. These important economic and consumer interests will be better achieved by the superior network made possible by combining T-Mobile and Sprint. Defendants lack knowledge or information sufficient to admit or otherwise deny the allegations in Paragraph 30 and on that basis deny those allegations.

31.     Defendants deny the allegations in Paragraph 31, because Plaintiffs have excluded various industry players from their definition of retail mobile wireless telecommunications

services in order to make it appear that Sprint and T-Mobile have a higher share than they actually do.

32.     Defendants admit the first sentence of Paragraph 32.  Defendants admit that the terms of mobile wireless telecommunications services agreements between T-Mobile and some large enterprise and government customers are set through individual negotiations.  Defendants lack knowledge or information sufficient to admit or otherwise deny whether the terms of mobile wireless telecommunications services agreements between other mobile wireless telecommunications services providers and enterprise and government customers are set through individual negotiations.  Defendants otherwise deny the allegations in Paragraph 32.

33.     Defendants admit that mobile wireless telecommunications services are sold in the United States to retail customers on a prepaid or postpaid basis.  Defendants otherwise deny the allegations in Paragraph 33.

34.     Defendants admit that AT&T, Sprint, T-Mobile and Verizon presently are the MNOs with networks that cover more than 90% of the United States population.  Defendants also note that other carriers, including MVNOs, offer nationwide services.  Defendants otherwise deny the allegations in Paragraph 34.

35.     Defendants admit that there are companies that operate regional networks, provide network coverage in certain states or regions, and have roaming agreements that allow them to provide nationwide service.  Defendants otherwise deny the remaining allegations in Paragraph 35.

36.     Defendants admit there are MVNOs that purchase network access from MNOs. Defendants also admit that MVNOs offer mobile retail services to customers.  Defendants otherwise deny the allegations in Paragraph 36 and note further that the term MVNO as

14

commonly used also includes mobile wireless telecommunication services providers such as Comcast, Charter and Altice, which purchase wholesale capacity from MNOs and use their own network infrastructure to provide mobile wireless telecommunications services to customers.

37.     Defendants deny the allegations in Paragraph 37.  Defendants note that on July 26, 2019 DISH issued a press release stating: "DISH Network will enter the U.S. wireless market as the fourth nationwide facilities-based network competitor" and that DISH has made legally-binding commitments to do so.

38.     Defendants admit that T-Mobile, Sprint, AT&T, and Verizon, among others, have announced plans to deploy 5G in limited areas, with limited capacity, or with limited coverage and that they have made statements about these limited deployments.  The allegations in the second and fourth sentences of Paragraph 38 characterize documents that are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the documents, they are denied.  Defendants otherwise deny the allegations in Paragraph 38 and note that T-Mobile's ability to roll out 5G will be greatly improved as a result of the merger.

39.     Defendants admit the first sentence of Paragraph 39.  Defendants admit that T-Mobile, Sprint, AT&T, and Verizon market plans that allow for use throughout the United States without additional charges.  Defendants admit that the effects of the merger will occur nationwide, but deny that the merger will substantially lessen competition for retail mobile wireless telecommunications services.  Defendants otherwise deny the allegations in Paragraph 39.

40.     Defendants admit the allegations in Paragraph 40 to the extent that population coverage refers to where customers live, not necessarily where they use their devices.

41.     Defendants admit that many customers use mobile wireless telecommunications services at and near their workplaces and homes, and in areas where they travel frequently. Defendants deny the remaining allegations in Paragraph 41 except Defendants admit that MNOs operate retail stores and sometimes offer very limited promotions in specific areas.

42.     Defendants admit that the FCC has identified Cellular Market Areas for use in spectrum licenses but deny that these are relevant antitrust markets.  Defendants otherwise deny the allegations in Paragraph 42.

43.     Defendants admit that T-Mobile and Sprint compete with each other to some extent, though AT&T and Verizon are much more significant competitors, and there are other competitors as well, including U.S. Cellular, Shentel, C-Spire, TracFone, Comcast, Charter, Google Fi, Consumer Cellular, Ultra Mobile, and Lycamobile.  Defendants also admit that the Top 50 CMAs encompass about 50% of the United States population.  Defendants deny that the merger would substantially lessen competition for retail mobile wireless telecommunications services in any area of the United States, and otherwise deny the allegations in Paragraph 43.

44.     Defendants admit that T-Mobile has occasionally run very limited short-term promotions in areas where it has improved its network quality, and that those promotions may include discounts on cellular handsets or service plans.  Defendants note, however, that the vast majority of T-Mobile's pricing and promotions are nationwide.  Defendants lack the knowledge or information sufficient to admit or deny whether Sprint, AT&T, or Verizon run promotions where they have improved the quality of their networks.  Defendants otherwise deny the allegations in Paragraph 44.

45.     Defendants admit that Sprint, T-Mobile, AT&T and Verizon compete on infrastructure.  Defendants admit that Sprint, T-Mobile, AT&T, Verizon, and DISH have

announced plans to deploy nationwide 5G networks, and that Sprint, T-Mobile, AT&T, and Verizon have announced plans to initially launch 5G services in different cities. Defendants admit that T-Mobile and Sprint intend to initially launch 5G services in several different cities, including those listed in Paragraph 45, but note that limited launches in different cities will not provide the same customer experience as the nationwide 5G network with deep capacity that will be enabled by the merger. Defendants admit that T-Mobile competes with Sprint, AT&T, Verizon, regional carriers such as U.S. Cellular, Shentel, and C-Spire, and a host of MVNOs including TracFone, Comcast, Charter, Google Fi, Consumer Cellular, Ultra Mobile, and Lycamobile to provide mobile wireless telecommunications customers with innovative services. Defendants otherwise deny the allegations in Paragraph 45.

46.     Defendants deny the allegations in Paragraph 46. Plaintiffs have improperly excluded industry players from their calculations to inflate their alleged shares, including a failure to recognize the Defendants' commitment to divest Boost Mobile.

47.     Defendants admit that the Herfindahl Hirschman Index is a method that has been used to measure market concentration. Defendants otherwise deny the allegations in Paragraph 47.

48.     Defendants deny the allegations in Paragraph 48.

49.     Defendants deny the allegations in Paragraph 49.

50.     Defendants deny the allegations in Paragraph 50.

51.     Defendants deny the allegations in Paragraph 51.

52.     Defendants deny the allegations in Paragraph 52.

53.     Defendants deny the allegations in Paragraph 53.

54.     Defendants deny the allegations in Paragraph 54.

55.     Defendants deny the allegations in Paragraph 55.

56.     The allegations in Paragraph 56 characterize documents that are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the documents, they are denied.  Defendants otherwise deny the allegations in Paragraph 56.

57.     The allegations in Paragraph 57 characterize documents that are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the documents, they are denied.  Defendants otherwise deny the allegations in Paragraph 57.

58.     The phrase "compete head-to-head" is vague.  To the extent that Plaintiffs simply mean that Sprint and T-Mobile compete for subscribers, Defendants admit that T-Mobile competes in the ordinary course of business against competitors including Sprint, as well as against AT&T, Verizon, regional carriers such as U.S. Cellular, Shentel, and C-Spire, and a host of MVNOs including TracFone, Comcast, Charter, Google Fi, Consumer Cellular, Ultra Mobile, and Lycamobile, to attract mobile wireless telecommunications services customers.  To the extent that Plaintiffs mean something else, Defendants lack sufficient knowledge or information to form a belief as to the allegations and on that basis deny them.  Defendants admit that, in competing with these various players, T-Mobile monitors their pricing activities to inform its pricing and other decisions.  The allegations in the last sentence of Paragraph 58 characterize the transcript of a deposition that is the best evidence of its contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the transcript, they are denied.  Defendants otherwise deny the allegations in Paragraph 58.

59.     The phrase "compete head-to-head" is vague.  To the extent that Plaintiffs simply mean that Sprint and T-Mobile compete for subscribers on the basis of network quality, Defendants admit that T-Mobile competes on network quality, pricing for cellular handsets, add-ons offered through partnerships with companies like Netflix and Hulu, among other dimensions, with Sprint, as well as AT&T, Verizon, regional carriers such as U.S. Cellular, Shentel, and C-Spire, and a host of MVNOs including TracFone, Comcast, Charter, Google Fi, Consumer Cellular, Ultra Mobile, and Lycamobile.  To the extent that Plaintiffs mean something else, Defendants lack sufficient knowledge or information to form a belief as to the allegations and on that basis deny them.  Defendants otherwise deny the allegations in Paragraph 59.

60.     Defendants deny that Sprint and T-Mobile compete "fiercely" in New York City, though Defendants admit that T-Mobile competes in New York City with Sprint, as well as AT&T and Verizon, and a host of MVNOs including TracFone, Charter, Google Fi, Consumer Cellular, Ultra Mobile, and Lycamobile, including through targeted promotions.  Defendants deny the implication that New York City or any other local CMA is a relevant geographic market.  The allegations in Paragraph 60 characterize documents that are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the documents, they are denied.  Defendants otherwise deny the allegations in Paragraph 60.

61.     Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 61 and on that basis deny those allegations.

62.     Defendants deny that there are local markets and therefore deny the allegations in the first sentence of Paragraph 62.  Defendants admit that T-Mobile and Sprint compete across the United States with each other as well as with AT&T, Verizon, regional carriers such as U.S.

Cellular, Shentel, and C-Spire, and a host of MVNOs including TracFone, Comcast, Charter, Google Fi, Consumer Cellular, Ultra Mobile, and Lycamobile.  Defendants admit that the quoted words in the Paragraph 62 appear in internal T-Mobile documents, as an example of one of many marketing activities that T-Mobile has undertaken against various competitors.  The remaining allegations in Paragraph 62 characterize documents that are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the documents, they are denied.  Defendants otherwise deny the allegations in Paragraph 62.

63.      The phrase "compete head-to-head" is vague.  To the extent that Plaintiffs simply mean that Sprint and T-Mobile compete for prepaid subscribers though, Defendants admit that T-Mobile competes for prepaid subscribers with Sprint, as well as with AT&T, Verizon, regional carriers such as U.S. Cellular, Shentel, and C-Spire, and a host of MVNOs such as TracFone, Comcast, Charter, Google Fi, Consumer Cellular, Ultra Mobile, and Lycamobile.  To the extent that Plaintiffs mean something else, Defendants lack sufficient knowledge or information to form a belief as to the allegations and on that basis deny them.  Defendants admit that T-Mobile sells prepaid services primarily through its Metro by T-Mobile brand and that Sprint sells prepaid services primarily through its Boost Mobile brand, which will be owned by DISH after the merger.  Defendants lack knowledge or information sufficient to admit or deny that the words quoted in Paragraph 63 appear in an internal Sprint document.  Defendants otherwise deny the allegations in Paragraph 63.

64.      The allegations in the second sentence of Paragraph 64 characterize documents that are the best evidence of their contents and, therefore, no response is required.  To the extent

the allegations differ from or mischaracterize the documents, they are denied. Defendants

otherwise deny the allegations in Paragraph 64.

65.     Defendants admit that T-Mobile competes with many companies, including

Sprint, but also AT&T, Verizon, regional carriers such as U.S. Cellular, Shentel, and C-Spire,

and a host of MVNOs including TracFone, Comcast, Charter, Google Fi, Consumer Cellular,

Ultra Mobile, and Lycamobile on a large set of competitive differentiators, only one of which is

price. The remaining allegations in Paragraph 65 characterize documents that are the best

evidence of their contents and, therefore, no response is required. To the extent the allegations

differ from or mischaracterize the documents, they are denied. The Boost business will be

divested as part of Defendants' commitments to the FCC, so allegations of competition with

Boost do not support Plaintiffs' claim. Defendants lack knowledge or information sufficient to

form a belief as to the allegations regarding the Sprint document and on that basis deny those

allegations and otherwise deny the allegations in Paragraph 65.

66.     Defendants admit that T-Mobile competes with many companies, including

Sprint, but also AT&T, Verizon, regional carriers such as U.S. Cellular, Shentel, and C-Spire,

and a host of MVNOs including TracFone, Comcast, Charter, Google Fi, Consumer Cellular,

Ultra Mobile, and Lycamobile, including on quality, price and add-ons. The merger will make

New T-Mobile more competitive across these dimensions.

67.     Defendants deny the allegations in Paragraph 67.

68.     Defendants admit that they sell products and services through a network of retail

stores, among other channels. Defendants admit that T-Mobile retail stores are sometimes

located on the same block or in the same shopping center as the retail stores of Sprint, AT&T,

Verizon, Comcast, or Charter, as well as retail stores that sell the service of TracFone, Consumer

Cellular, Ultra Mobile, Lycamobile, and a host of other MVNOs.  Defendants admit that

MetroPCS stores are sometimes located on the same block or in the same shopping center as the

retail stores of Boost or Cricket, as well as retail stores that sell the service of TracFone,

Consumer Cellular, Ultra Mobile, Lycamobile, and a host of other MVNOs.  Defendants

otherwise deny the allegations in Paragraph 68.

69.     Defendants admit that Sprint launched a plan offering unlimited talk, text, and

data without mobile hotspot service or device financing options for $15 per month, for a limited

time in June 2018, through only its online and phone-based channels, for customers willing to

port their number.  Defendants otherwise deny the allegations in Paragraph 69.

70.     The allegations in Paragraph 70 characterize Sprint's recent filings with the U.S.

Securities and Exchange Commission, which are the best evidence of their contents and,

therefore, no response is required.  To the extent the allegations differ from or mischaracterize

the documents, they are denied.

71.     Defendants admit Sprint holds on average 160 MHz of 2.5 GHz spectrum, but

note that Sprint does not have 160 MHz in all of the Top 100 CMAs.  Sprint is unable to utilize

this spectrum in a way that is anywhere close to how it will be utilized for the benefit of

consumers by the merged firm.

72.     The allegations in Paragraph 72 characterize statements made by Sprint's

Executive Chairman and former CEO, Marcelo Claure, which are the best evidence of their

contents and, therefore, no response is required.  To the extent the allegations differ from or

mischaracterize the statements, they are denied.  Defendants deny all the remaining allegations in

Paragraph 72.

73.     Defendants admit that the roaming agreement referenced in Paragraph 73 provides Sprint customers limited access to T-Mobile's network pursuant to the terms set forth therein, but Defendants otherwise deny the allegations in Paragraph 73.  Defendants note that the roaming agreement is limited in both scope and duration, and it is not a substitute for the efficiencies and synergies that would result from a full integration of the networks.

74.     Defendants deny the allegations in Paragraph 74.

75.     Defendants deny the allegations in Paragraph 75, but Defendants admit that the Sprint brand will cease to operate independently.

76.     Defendants admit that T-Mobile has an Un-carrier philosophy that provides the cited benefits – including unlimited data use, international roaming without additional charges, postpaid service without long-term contracts, and video and music streaming without deducting from the amount of high-speed data allotted to users on unlimited plans – to consumers in competition with AT&T, Verizon and others.  This approach will continue after the merger and New T-Mobile will become even more competitive with the network improvements that will come from the merger.  Defendants otherwise deny the allegations in Paragraph 76.

77.     Defendants deny the allegations in Paragraph 77.

78.     Defendants admit that competition from T-Mobile has driven Verizon, AT&T, and others to improve their offerings, and avers that the dramatic improvement in the network made possible by the merger will increase the competitive pressure on those competitors to make further improvements to keep pace.  Defendants deny the allegations in the second sentence of Paragraph 78 because the merger will increase, not decrease, competitive pressure on AT&T and Verizon to accelerate their transition to 5G.  Defendants otherwise deny the allegations in Paragraph 78.

79.     The allegations in Paragraph 79 characterize the deposition transcript of John Legere, which is the best evidence of its contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the transcript, they are denied.  Defendants admit that the combined Sprint and T-Mobile would have an increased base, increased absolute profit, and increased cash flow than either would as a standalone company.  Defendants deny the remaining allegations in Paragraph 79.

80.     Defendants admit that T-Mobile competes with Sprint, AT&T, Verizon, as well as regional networks such as U.S. Cellular, Shentel, and C-Spire, and a host of MVNOs including TracFone, Comcast, Charter, Google Fi, Consumer Cellular, Ultra Mobile, and Lycamobile on multiple dimensions, including price, network quality, network coverage, and features.  Defendants admit that Sprint, T-Mobile, AT&T, and Verizon combined had wireless services revenues of more than $160 billion.  Defendants otherwise deny the allegations in Paragraph 80.

81.     Defendants deny the allegations in Paragraph 81.

82.     Defendants admit that wireless carriers offer some pricing information in stores, online, and in television, radio, print and online advertisements.  Defendants otherwise deny the allegations in Paragraph 82.

83.     Defendants deny the allegations in Paragraph 83.

84.     The allegations in the last sentence of Paragraph 84 characterize T-Mobile internal emails that are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the documents, they are denied.  Defendants otherwise deny the allegations in Paragraph 84.

85.     Defendants admit that T-Mobile has pursued competitive and disruptive strategies, but note that such behavior is manifestly inconsistent with price signaling that leads to

24

higher prices and thus deny Plaintiffs' allegation of same.  Defendants admit that Verizon

announced that it would offer "Go Unlimited" plans for customers 55 and older at $60 per month

for one line and $80 per month for two lines, that T-Mobile announced that it would raise its

monthly price from $60 for two lines to $70 for its plan offered to customers 55 years and older

on March 8, 2018, and that Sprint announced that it would introduce its own Unlimited 55+ plan

at T-Mobile's price point in May 2018, but deny that this anecdote provides a complete picture

of competition in the industry.  Defendants otherwise deny the allegations in Paragraph 85.

86.     Defendants deny the allegations in Paragraph 86.

87.     Defendants admit that operating as a pure MVNO, by Plaintiffs' definition,

requires an agreement to purchase wholesale capacity from at least one MNO, but Defendants

note that the largest MVNO in the country, TracFone, which accounts for over 21 million

wireless subscribers, purchases a significant amount of its services from AT&T and Verizon.  In

addition, other successful MVNOs, including Comcast and Charter, which have won a

significant share of industry gross additions since launching their services, do not rely on the

Sprint or T-Mobile networks to offer their wireless services.  Defendants otherwise deny the

allegations in Paragraph 87.

88.     Defendants lack knowledge or information sufficient to admit or deny the

allegations in Paragraph 88 and on that basis deny the allegations in Paragraph 88.

89.     Defendants lack knowledge or information sufficient to admit or deny the

allegations in Paragraph 89 and on that basis deny the allegations in Paragraph 89.

90.     The allegations in Paragraph 90 characterize deposition transcripts, which are the

best evidence of their contents and, therefore, no response is required.  To the extent the

allegations differ from or mischaracterize the transcripts, they are denied.  Defendants otherwise deny the allegations in Paragraph 90.

91.     Defendants deny the allegations in Paragraph 91.

92.     Defendants deny the allegations in Paragraph 92.

93.     Defendants deny that studies in other countries have any relevance to this case, deny that the selective assertions about studies in other countries in Paragraph 93 provide a complete or accurate picture, and otherwise deny the allegations in Paragraph 93.

94.     Defendants deny the allegations in Paragraph 94.  Defendants note that on July 26, 2019, DISH issued a press release stating "DISH Network will enter the U.S. wireless market as the fourth nationwide facilities-based network competitor" and that DISH has made legally-binding commitments to do so.

95.     Defendants deny the allegations in Paragraph 95.

96.     Defendants deny the allegations in Paragraph 96.

97.     Defendants deny the allegations in Paragraph 97.

98.     Defendants admit that Sprint and T-Mobile have plans to deploy 5G service absent the merger in some markets, but with far less capacity, and in Sprint's case, far less coverage, than the 5G service that New T-Mobile will be able to deploy following the merger. The allegations in Paragraph 98 characterize Sprint's webpage, a T-Mobile announcement, and a statement from John Legere's Twitter account that are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize these statements, they are denied.  Defendants otherwise deny the allegations in Paragraph 98.

99.     The allegation in Paragraph 99 states a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 99.

100.     Defendants deny that the merger will result in harm to competition or consumers, or that the FCC commitments do not guarantee the benefits of the merger.  Defendants otherwise deny that the allegations in Paragraph 100.

101.     Defendants deny that the merger will cause harm and deny that the network build commitments do not guarantee the benefits of the merger.  Defendants otherwise deny the allegations in Paragraph 101.

102.     Defendants deny the allegations in Paragraph 102.

103.     Defendants deny that the merger will cause harm to competition or consumers and deny that the pricing commitment made to the FCC does not guarantee the benefits of the merger.  Defendants admit that T-Mobile offers promotions.  Defendants otherwise deny the allegations in Paragraph 103.

104.     Defendants deny that the merger will result in harm to competition.  Defendants deny the remaining allegations in Paragraph 104.

105.     Defendants deny that the merger will cause harm to competition or consumers and deny that the legally binding commitments to contribute to the U.S. Treasury in the event their commitments to the FCC are not met do not guarantee the benefits of the merger.  These penalties, which in the aggregate could total in the billions of dollars, are also subject to stringent verification processes by the expert federal regulator in the telecommunications industry, the FCC.  These potential financial penalties provide a further incentive for the combined company to follow through on its established plans of expanding output, reducing prices, and increasing

product quality, as well as to create another strong competitor through the divestment of Boost. Defendants otherwise deny the allegations in Paragraph 105.

106.    Defendants admit the Proposed DISH Settlement was filed less than three weeks before the filing of the Second Amended Complaint.  Defendants lack knowledge or information sufficient to admit or otherwise deny the allegations in Paragraph 106 and on that basis deny those allegations.

107.    Defendants deny the allegations in Paragraph 107.

108.    Defendants admit DISH has made commitments to the U.S. Department of Justice and the FCC, including commitments to build network infrastructure and offer certain services. Defendants otherwise deny the allegations in Paragraph 108.

109.    Defendants deny the allegations in Paragraph 109.

110.    Defendants deny the allegations in Paragraph 110.

111.    Defendants deny the allegations in Paragraph 111.

## **OTHER DEFENSES**

Without assuming the burden of proof that it would otherwise not bear under applicable law, Defendants assert the following affirmative defense:  The Second Amended Complaint fails to state a claim upon which relief can be granted.  Defendants reserve the right to assert and rely upon any other defenses that may become available or known to Defendants throughout the course of this action, and to amend, or seek to amend, its answer or affirmative defenses.

Dated: August 28, 2019

Respectfully submitted,

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

*/s/ George S. Cary*
George S. Cary (*pro hac vice*)
David I. Gelfand (*pro hac vice*)
gcary@cgsh.com
dgelfand@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone:  (202) 974-1500
Facsimile:  (202) 974-1999

*Counsel for Defendant T-Mobile US, Inc.*

WILMER CUTLER PICKERING
HALE AND DORR LLP

*/s/ Hallie B. Levin*
Hallie B. Levin
hallie.levin@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone:  (212) 295-6710
Facsimile:  (212) 230-8888

*Counsel for Defendant T-Mobile US, Inc.*

WILSON SONSINI GOODRICH & ROSATI

*/s/ Joshua H. Soven*
Joshua H. Soven (*pro hac vice*)
jsoven@wsgr.com
Wilson Sonsini Goodrich & Rosati
1700 K Street, NW 5th Floor
Washington, DC 20006-3817
Telephone:  (202) 973-8827
Facsimile:  (202) 973-8899

*Counsel for Defendant Deutsche Telekom AG*

GIBSON, DUNN & CRUTCHER LLP

*/s/ Richard G. Parker*
Richard G. Parker (*pro hac vice*)
rparker@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  (202) 955-8503
Facsimile:  (202) 530-9518

*Counsel for Defendant Deutsche Telekom AG*