**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

STATE OF NEW YORK, *et al.*

                *Plaintiffs*,

      v.

DEUTSCHE TELEKOM AG, *et al.*

                *Defendants*.

Case No. 1:19-cv-5434 (VM)-RWL

ECF Case

---

## ANSWER OF DEFENDANTS SPRINT CORPORATION
## AND SOFTBANK GROUP CORP. TO PLAINTIFFS' THIRD AMENDED COMPLAINT

Defendants Sprint Corporation ("Sprint") and Softbank Group Corp. ("SoftBank," and together with Sprint, "Defendants") by their undersigned attorneys, answer as follows the allegations of the Third Amended Complaint filed September 18, 2019 (the "Complaint"), by the State Attorneys General ("Plaintiffs"). Except for those allegations expressly admitted herein, Defendants deny each and every allegation in the Complaint. Except as noted herein, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding statements made in internal documents by T-Mobile US, Inc. ("T-Mobile") or Deutsche Telekom AG ("Deutsche Telekom"), or any other allegations regarding non-public statements, commercial plans, or intentions of companies other than Defendants. Defendants expressly deny that Plaintiffs are entitled to the relief requested or any other relief. Defendants further deny that the headings and footnotes contained in the Complaint constitute

allegations of fact, and Defendants deny them to the extent that they are considered as such. Defendants reserve the right to amend this Answer.

Defendants incorporate by reference the preliminary statement contained in the Answer of T-Mobile and Deutsche Telekom to the Complaint.

<b><u>SPECIFIC RESPONSES TO PLAINTIFFS' ALLEGATIONS</u></b>

<b>I.    NATURE OF THE ACTION</b>

<u>Response to Paragraph No. 1</u>:

Defendants admit the allegations in Paragraph No. 1, except Defendants deny that low-income consumers who cannot pass a credit check "must purchase mobile wireless telecommunications services on a prepaid basis," and Defendants note that there are postpaid plans available that do not require a credit check. Defendants further note that the merger will benefit all consumers of mobile wireless telecommunications services.

<u>Response to Paragraph No. 2</u>:

Defendants admit that competition has enabled mobile wireless telecommunications services to become vital to the everyday lives of many people by contributing to dramatic improvements in quality and reductions in prices, but Defendants note that technological innovation has been a significant factor in those improvements. To the extent the allegations in the second and third sentences of Paragraph No. 2 rely on publicly available documents, those documents speak for themselves. To the extent that the allegations in the second and third sentences of Paragraph No. 2 do not accurately reflect those documents, Defendants deny those allegations. Defendants also admit that competition for mobile wireless telecommunications services is essential to ensure continued innovation and low prices for American consumers. The merger of T-Mobile and Sprint is procompetitive and will result in further benefits to the

everyday lives of consumers, as recognized by the FCC Chairman in his public statements in support of the transaction.[1]  Indeed, because Plaintiffs' lawsuit seeks to prevent consumers from realizing the tremendous benefits of the pending transaction, the FCC Chairman has been quoted as stating:  "[M]ake no mistake about it, government officials trying to block this transaction are working to stop many upstate New Yorkers and other rural Americans from getting access to fast mobile broadband and all of the benefits that come with it" and "I hope that these misguided efforts fail."[2]  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 2 and therefore deny these allegations.

Response to Paragraph No. 3:

Defendants admit that Sprint, AT&T, Verizon, and T-Mobile are the only four MNOs in the United States with networks that serve at least 90% of the U.S. population, and that T-Mobile and Sprint are the third- and fourth-largest mobile network operators in the United States on the basis of both subscribers and revenues (among other metrics), but Defendants note that other carriers, including MVNOs, can also offer nationwide services.  Defendants admit that Verizon and AT&T are dominant in the provision of mobile wireless telecommunications services in the United States, but Defendants deny that either T-Mobile or Sprint dominate any aspect of mobile wireless telecommunications services.  Defendants note that Sprint and T-Mobile are smaller competitors of AT&T and Verizon and have failed to win significant share from those larger

---

[1] *See* Chairman Pai Statement on T-Mobile/Sprint Transaction, (May 20, 2019), https://docs.fcc.gov/public/attachments/DOC-357535A1.pdf ("In light of the significant commitments made by T-Mobile and Sprint as well as the facts in the record to date, I believe that this transaction is in the public interest and intend to recommend to my colleagues that the FCC approve it. This is a unique opportunity to speed up the deployment of 5G throughout the United States and bring much faster mobile broadband to rural Americans. We should seize this opportunity.").
[2] Lily Lieberman, *FCC's Pai Hopes 'Misguided' Sprint/T-Mobile Antitrust Litigation Fails*, Kansas City Business Journal (June 25, 2019), https://www.bizjournals.com/kansascity/news/2019/06/25/fcc-ajit-pai-sprint-tmobile-antitrust-lawsuit.html?iana=cp_news_link.

competitors in recent years.  In fact, Sprint has lost significant share in recent years.  Defendants deny the remaining allegations in Paragraph No. 3.

Response to Paragraph No. 4:

Defendants admit that Sprint and T-Mobile previously contemplated a merger in 2014. Defendants admit that they are aware that T-Mobile previously attempted to merge with AT&T. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 4 and therefore deny these allegations.

Response to Paragraph No. 5:

Defendants admit the first sentence in Paragraph No. 5.  Defendants also admit that after the merger is consummated, Sprint will no longer operate as an independent wireless carrier. Defendants deny the remaining allegations in Paragraph No. 5.

Response to Paragraph No. 6:

Defendants admit that Sprint and T-Mobile are competitors.  To the extent the allegations in the fifth sentence of Paragraph No. 6 rely on sworn testimony, that testimony speaks for itself. To the extent the allegations in the fifth sentence of Paragraph No. 6 do not accurately reflect the testimony, Defendants deny the allegations.  Defendants deny the remaining allegations in Paragraph No. 6.

Response to Paragraph No. 7:

Defendants deny the allegations in Paragraph No. 7 but note that there are postpaid plans that do not require a credit check.  Moreover, the allegations in Paragraph No. 7 are incomplete to the extent that they omit that Sprint's Boost prepaid business will be sold to DISH Network Corporation ("DISH").

Response to Paragraph No. 8:

Defendants deny that the merger will lessen competition, deny that any commitments are needed to address harm to competition, and therefore deny the last sentence of Paragraph No. 8. Defendants note that on August 14, 2019, the FCC Chairman circulated a draft Order approving the merger. The FCC Chairman stated, "[W]ith the conditions included in this draft Order, the merger will promote robust competition in mobile broadband, put critical mid-band spectrum to use, and bring new competition to the fixed broadband market." Defendants admit the remaining allegations in Paragraph No. 8 but note that on May 20, 2019, Commissioner O'Reilly stated, "I am inclined to support T-Mobile/Sprint proposed merger, even if not convinced of the need for all the newly announced conditions being proposed."

Response to Paragraph No. 9:

Defendants admit that to resolve its investigation of the merger, the U.S. Department of Justice, joined by the States of Kansas, Nebraska, Ohio, Oklahoma, and South Dakota, filed a Complaint (the "DOJ Complaint"), Stipulation and Order, and Proposed Final Judgment on July 26, 2019. In addition, the States of Louisiana and Florida joined the settlement on August 15, 2019, and October 2, 2019, respectively. Defendants did not participate in the drafting of the DOJ Complaint and have not and will not admit the allegations contained therein because the case was simultaneously settled by consent order. Defendants admit the proposed settlement is subject to public comment under the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, commonly referred to as the Tunney Act. Defendants admit that the Stipulation and Order and Proposed Final Judgment lay out divestitures to DISH and other commitments by Defendants to settle the case, but Defendants deny that the proposed DISH settlement does not resolve the alleged harms to competition. The DOJ concluded in the Competitive Impact Statement, filed on

July 30, 2019, that "DISH's long-term build out of a new network, along with the short-term requirement that DISH and T-Mobile negotiate a lease for DISH's currently unused 600 MHz spectrum, promise to increase output and put currently fallow spectrum into use by American consumers. . . .Further, the proposed Final Judgment would allow the potential benefits of the merger to be realized, including expanding American consumers' access to high quality networks." Defendants deny the remaining allegations in Paragraph No. 9.

Response to Paragraph No. 10:

Defendants deny that the effect of T-Mobile's merger with Sprint may be substantially to lessen competition. In fact, the merger will increase competition. The remainder of the allegations in Paragraph No. 10 are requests for relief or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

## II. JURISDICTION AND VENUE

Response to Paragraph No. 11:

Defendants admit that Plaintiffs purport to take the actions stated in Paragraph No. 11. Defendants deny that they have violated or will violate Section 7 of the Clayton Act, and Defendants deny that Plaintiffs are entitled to relief of any kind. To the extent that Paragraph No. 11 asserts any factual allegations, Defendants deny these allegations.

Response to Paragraph No. 12:

The allegations in Paragraph No. 12 are legal conclusions and therefore do not require a response. To the extent a response is required, Defendants admit the allegations in Paragraph No. 12.

<u>Response to Paragraph No. 13</u>:

The allegations in Paragraph No. 13 are legal conclusions and therefore do not require a response. To the extent a response is required, Defendants deny the allegations in Paragraph No. 13.

<u>Response to Paragraph No. 14</u>:

The allegations in Paragraph No. 14 are legal conclusions and therefore do not require a response. To the extent a response is required, Defendants admit the allegations in Paragraph No. 14.

<u>Response to Paragraph No. 15</u>:

To the extent the allegations in Paragraph No. 15 rely on either the Business Combination Agreement or agreements executed in connection with the proposed transaction, the documents speak for themselves. To the extent that the allegations in Paragraph No. 15 do not accurately reflect the Business Combination Agreement or agreements executed in connection with the proposed transaction, Defendants deny the allegations. The allegation that the Court has personal jurisdiction over each Defendant under Section 12 of the Clayton Act, 15 U.S.C. § 22, and Federal Rule of Civil Procedure 4, is a legal conclusion and therefore does not require a response. To the extent a response is required, Defendants admit the allegations in Paragraph No. 15 as to Sprint and SoftBank.

<u>Response to Paragraph No. 16</u>:

Defendants deny the allegations in Paragraph No. 16.

## III.    THE PARTIES

<u>Response to Paragraph No. 17</u>:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 17 and therefore deny these allegations.

<u>Response to Paragraph No. 18</u>:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 18 and therefore deny these allegations.

<u>Response to Paragraph No. 19</u>:

Defendants deny that Sprint was serving approximately 55 million customers at the end of 2018, to the extent that the allegation in Paragraph No. 19 suggests that those customers were provided services under Sprint-owned brands.  Sprint serviced approximately 42 million devices connected to its network at the end of its fiscal year 2018, and another approximately 13 million devices at the end of its fiscal year 2018 connected to the Sprint network through services provided by third parties that purchased capacity from Sprint—with both of these numbers excluding connections through Lifeline services.  Defendants admit the remaining allegations in Paragraph No. 19.

<u>Response to Paragraph No. 20</u>:

To the extent the allegations in Paragraph No. 20 rely on publicly available documents, those documents speak for themselves.  To the extent that the allegations in Paragraph No. 20 do not accurately reflect those documents, Defendants deny the allegations.  Moreover, Defendants note that these selected quotes, provided in isolation and without context, present an incomplete picture of Sprint's performance in terms of both subscriber and financial metrics.  For example, Sprint *lost* over 500,000 postpaid phone subscribers in FY2018, and its total company service

revenue has declined every year since FY2013. Further, while Defendants admit that Sprint announced plans to launch 5G in nine cities during 2019, Sprint is constrained from deploying a nationwide, geographically ubiquitous 5G network because it lacks sufficient low-band spectrum and because the propagation characteristics of its 2.5 GHz spectrum restrict its ability to cover wide geographic areas, including many rural areas, and limit its in-building coverage. Defendants deny the remaining allegations in Paragraph No. 20.

Response to Paragraph No. 21:

      Defendants admit the allegations in Paragraph No. 21.

## IV.    THE MERGER

Response to Paragraph No. 22:

      To the extent the allegations in Paragraph No. 22 rely on the Business Combination Agreement, that document speaks for itself. To the extent that the allegations in Paragraph No. 22 do not accurately reflect the Business Combination Agreement, Defendants deny the allegations. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 22 and therefore deny these allegations.

Response to Paragraph No. 23:

      To the extent the allegations in Paragraph No. 23 rely on the Commitment Letter, that document speaks for itself. To the extent that the allegations in Paragraph No. 23 do not accurately reflect the Commitment Letter, Defendants deny the allegations. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 23 and therefore deny these allegations.

<u>Response to Paragraph No. 24</u>:

Defendants admit that three nationwide MNOs would remain following the merger. Defendants admit the third and fourth sentences of Paragraph No. 24. Defendants deny the remaining allegations in Paragraph No. 24.

<u>Response to Paragraph No. 25</u>:

Defendants deny the allegations in Paragraph No. 25.

<u>Response to Paragraph No. 26</u>:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 26 and therefore deny these allegations.

<u>Response to Paragraph No. 27</u>:

Defendants admit that Sprint and T-Mobile entered into a limited roaming agreement. That roaming agreement is limited in scope and duration. To the extent that the allegations in Paragraph No. 27 rely on the Domestic LTE Roaming Data Services Agreement, that document speaks for itself. To the extent that the allegations in Paragraph No. 27 do not accurately reflect that document, Defendants deny the allegations. Defendants admit the last sentence of Paragraph No. 27, but Defendants note that the agreement is set to expire four years after the abandonment of the merger.

## V. TRADE AND COMMERCE

### A. Relevant Product Market

<u>Response to Paragraph No. 28</u>:

The allegations in Paragraph No. 28 are legal conclusions and therefore do not require a response. To the extent a response is required, Defendants deny the allegations.

Response to Paragraph No. 29:

Defendants admit the allegations in Paragraph No. 29, except that Defendants deny that mobile wireless telecommunications services must include "traditional voice calling" as a "feature." Defendants further deny the allegations in Paragraph No. 29 to the extent that they are interpreted to refer to *simultaneous* transmittal of voice and data sessions. Until recently, Sprint's network did not offer voice-over-LTE ("VoLTE") capability, meaning that customers could not simultaneously make voice calls and use data. Sprint only began offering some, but not currently all, of its customers the ability to simultaneously use data and voice capabilities in late 2018, and many customers remain unable to make voice calls and use data simultaneously.

Response to Paragraph No. 30:

Defendants admit that many customers "highly value" mobility and that access to mobile wireless telecommunications services is important to many individuals in the United States. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 30 and therefore deny these allegations.

Response to Paragraph No. 31:

Defendants deny the allegations in Paragraph No. 31. Defendants note that Plaintiffs have excluded various industry players from their definition of retail mobile wireless telecommunications services in order to make it appear as though Sprint and T-Mobile have a higher share than they actually do.

Response to Paragraph No. 32:

Defendants admit the first sentence of Paragraph No. 32. Defendants admit that the terms of mobile wireless telecommunications services agreements between Sprint and some large enterprise and government customers are set through individual negotiations. Defendants lack

knowledge or information sufficient to form a belief as to the truth of the allegations that the terms of mobile wireless telecommunications services agreements between other mobile wireless telecommunications services providers and enterprise and government customers are set through individual negotiations and therefore deny these allegations. Defendants otherwise deny the allegations in Paragraph No. 32.

Response to Paragraph No. 33:

Defendants admit that mobile wireless telecommunications services are sold in the United States to retail customers on a prepaid or postpaid basis. Defendants deny the remaining allegations in Paragraph No. 33.

### B. Wireless Carriers in the United States

Response to Paragraph No. 34:

Defendants admit that in the United States, AT&T, Sprint, T-Mobile, and Verizon offer nationwide networks that can provide mobile wireless telecommunications services to more than 90% of the population, but Defendants note that other carriers, including MVNOs, can offer nationwide services. Defendants deny the remaining allegations in Paragraph No. 34.

Response to Paragraph No. 35:

Defendants admit that there are companies that operate regional networks, provide network coverage in certain states or regions, and have roaming agreements that allow them to provide nationwide service. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the roaming agreements to which they are not a party, and Defendants also lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the needs of other carriers' customers. Defendants deny the remaining allegations in Paragraph No. 35.

Response to Paragraph No. 36:

Defendants admit that there are MVNOs that purchase network access from MNOs. Defendants also admit that MVNOs offer retail services to customers. Defendants note that the term MVNO also commonly includes mobile wireless telecommunication services providers such as Comcast, Charter, and Altice, which both purchase wholesale capacity from MNOs and also use their own network infrastructure to provide mobile wireless telecommunications services to customers. Defendants deny the remaining allegations in Paragraph No. 36.

Response to Paragraph No. 37:

Defendants deny the allegations in Paragraph No. 37. Defendants note that on July 26, 2019, DISH issued a press release stating, "DISH Network will enter the U.S. wireless market as the fourth nationwide facilities-based network competitor" and that DISH has made legally binding commitments to do so.

Response to Paragraph No. 38:

Defendants admit that T-Mobile, Sprint, AT&T, and Verizon, among others, have all announced that they are deploying 5G in limited areas and that they have made statements about these limited deployments. Defendants lack knowledge or information sufficient to form a belief as to the truth of those announced plans. To the extent the allegations in the second and fourth sentences of Paragraph No. 38 rely on publicly available documents, those documents speak for themselves. To the extent the allegations in the second and fourth sentences of Paragraph No. 38 do not accurately reflect those documents, Defendants deny the allegations. Defendants deny the remaining allegations in Paragraph No. 38.

## C. Relevant Geographic Markets

Response to Paragraph No. 39:

Defendants admit that retail mobile wireless telecommunications services are marketed and sold nationwide through national advertisements. Defendants admit that Sprint, T-Mobile, AT&T, and Verizon market plans that allow for use of these services throughout the United States, but Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that such plans are provided without additional charges and therefore deny this allegation. The allegation that it is appropriate to identify the United States as a geographic market is a legal conclusion and therefore does not require a response. To the extent a response is required, Defendants admit that the effects of the merger will occur nationwide. Defendants deny the remaining allegations in Paragraph No. 39.

Response to Paragraph No. 40:

Defendants admit the allegations in Paragraph No. 40 to the extent that population coverage refers to where customers live, not necessarily where they use their devices.

Response to Paragraph No. 41:

The allegation that the effect of the proposed merger can be evaluated in local geographic markets is a legal conclusion and therefore does not require a response. To the extent a response is required, Defendants deny this allegation. Defendants admit that MNOs operate retail stores and sometimes offer very limited promotions in specific areas. Defendants admit that many customers use mobile wireless telecommunications services at and near their workplaces and homes and in areas where they travel frequently. Defendants deny the remaining allegations in Paragraph No. 41.

Response to Paragraph No. 42:

Defendants admit that the FCC has identified Cellular Market Areas for use in spectrum licenses.  The allegation that these CMAs are relevant geographic markets is a legal conclusion and therefore does not require a response.  To the extent a response is required, Defendants deny the allegation.  Defendants deny the remaining allegations in Paragraph No. 42.

Response to Paragraph No. 43:

Defendants admit that Sprint competes with T-Mobile, but Defendants note that Sprint competes with a number of other players, including Verizon, AT&T, MVNOs, regional wireless-services providers, and cable companies.  Defendants admit that the Top 50 CMAs encompass about 50% of the U.S. population.  Defendants deny the remaining allegations in Paragraph No. 43.

Response to Paragraph No. 44:

Defendants admit that Sprint has occasionally run short-term promotions in areas where it has improved its network quality, and that those promotions may include discounts on cellular handsets or service plans.  However, Defendants note that the vast majority of Sprint's pricing and promotions are nationwide.  Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations that T-Mobile, AT&T, or Verizon run promotions where they have improved the quality of their networks and therefore deny these allegations. Defendants deny the remaining allegations in Paragraph No. 44.

Response to Paragraph No. 45:

Defendants admit that AT&T, Verizon, T-Mobile, and Sprint compete on infrastructure. Defendants admit that AT&T, Verizon, T-Mobile, Sprint and DISH have all announced plans to deploy 5G networks, and that AT&T, Verizon, T-Mobile and Sprint have announced plans to

initially launch 5G services in various cities.  Defendants admit that Sprint plans to offer 5G in

nine cities by the end of 2019.  Defendants deny the remaining allegations in Paragraph No. 45.

     **D.**     **The Merger Would Increase Concentration in the Markets for Retail Mobile Wireless Telecommunication Services**

Response to Paragraph No. 46:

     Defendants deny the allegations in Paragraph No. 46.

Response to Paragraph No. 47:

     Defendants admit that the Herfindahl Hirschman Index is a method that has been used to

measure market concentration.  Defendants deny the remaining allegations in Paragraph No. 47.

Response to Paragraph No. 48:

     To the extent the allegations in Paragraph No. 48 rely on the Proposed Final Judgment,

that document speaks for itself.  To the extent the allegations in Paragraph No. 48 do not

accurately reflect that document, Defendants deny the allegations.  Defendants deny the

remaining allegations in Paragraph No. 48.

Response to Paragraph No. 49:

     Defendants deny the allegations in Paragraph No. 49.

Response to Paragraph No. 50:

     Defendants deny the allegations in Paragraph No. 50.

Response to Paragraph No. 51:

     Defendants deny the allegations in Paragraph No. 51.

Response to Paragraph No. 52:

     Defendants deny the allegations in Paragraph No. 52.

Response to Paragraph No. 53:

     Defendants deny the allegations in Paragraph No. 53.

Response to Paragraph No. 54:

Defendants deny the allegations in Paragraph No. 54.

Response to Paragraph No. 55:

Defendants deny the allegations in Paragraph No. 55.

## VI. ANTICOMPETITIVE EFFECTS

### A. The Merger Is Part of a Long-Term Plan To Increase Profits by Reducing Competition

Response to Paragraph No. 56:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 56 and therefore deny these allegations.

Response to Paragraph No. 57:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 57 and therefore deny these allegations.

### B. The Merger Would Eliminate Competition Between Sprint and T-Mobile

Response to Paragraph No. 58:

Defendants admit that Sprint competes with T-Mobile, AT&T, and Verizon, as well as MVNOs, regional wireless-services providers, and cable companies. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph No. 58 and therefore deny these allegations. Defendants admit that Sprint monitors publicly available information regarding pricing activities of its many competitors, including, but by no means limited to, T-Mobile. To the extent the allegations in the last sentence of Paragraph No. 58 rely on sworn testimony, that testimony speaks for itself. To the extent the allegations in the last sentence of Paragraph No. 58 do not accurately reflect the testimony, Defendants deny the allegations. Defendants deny the remaining allegations in

Paragraph No. 58, including to the extent that they suggest Sprint bases pricing decisions only on or primarily on T-Mobile's pricing activities.

Response to Paragraph No. 59:

Defendants admit that Sprint competes against T-Mobile on network quality, pricing for cellular handsets, and add-ons offered through partnerships with companies like Netflix and Hulu, as it does against all of its many other competitors that offer wireless services, including AT&T, Verizon, regional wireless carriers, other MVNOs, and the cable companies. Defendants deny the remaining allegations in Paragraph No. 59, including to the extent that they purport to imply that Sprint uniquely competes against T-Mobile.

Response to Paragraph No. 60:

Defendants admit that Sprint competes in New York City against T-Mobile, as it does with many other players, including AT&T, Verizon, regional wireless-services providers, MVNOs, and cable companies nationally. Defendants deny the remaining allegations in the first sentence of Paragraph No. 60, insofar as they suggest that Sprint bases competitive decision-making only on, or primarily on, T-Mobile's conduct or conduct in New York. Defendants deny the implication that New York City or any other local CMA is a relevant geographic market. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 60 and therefore deny these allegations.

Response to Paragraph No. 61:

Defendants admit that Sprint competes in the New York metropolitan area and that it uses billboards for advertising. To the extent that the allegations in the second sentence of Paragraph No. 61 rely on publicly available documents, those documents speak for themselves. To the extent the allegations in the last sentence of Paragraph No. 61 do not accurately reflect those

documents, Defendants deny the allegations. Defendants further admit that Sprint has modestly improved its network in the New York City and Long Island areas due, at least in part, to its agreement with Altice, but Defendants note that Sprint's MVNO agreement with Altice does not meaningfully address the network or subscriber issues that Sprint faces on a nationwide basis, nor is it a model that is replicable on a nationwide basis. Defendants deny the remaining allegations in Paragraph No. 61.

Response to Paragraph No. 62:

Defendants admit that Sprint competes with T-Mobile, including in California and nationally, as well as many other players, including AT&T, Verizon, regional wireless-services providers, MVNOs, and cable companies. Defendants deny the implication that any local market is a relevant geographic market. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding statements in T-Mobile's documents or the competitive decisions of T-Mobile and therefore deny these allegations. Defendants deny the remaining allegations of Paragraph No. 62.

Response to Paragraph No. 63:

Defendants admit that Sprint competes against T-Mobile in offering prepaid plans, as well as against multiple other wireless providers, including those offering prepaid plans like AT&T's Cricket Wireless, Verizon, TracFone, and a variety of others. Defendants admit that Sprint sells prepaid services primarily through its Boost Mobile brand, which will be owned by DISH following the merger. To the extent that the allegations in the fifth sentence of Paragraph No. 63 rely on sworn testimony, that testimony speaks for itself. To the extent the allegations do not accurately reflect that testimony, Defendants deny the allegations in Paragraph No. 63. Defendants admit that the word "port-ins" is used to refer to customers that switch to a mobile

wireless-services provider and keep their previous number, and that the word "port-outs" is used to refer to customers that switch away from a mobile wireless-services provider and keep their number. Defendants deny the remaining allegations in Paragraph No. 63.

Response to Paragraph No. 64:

Defendants deny that Boost Mobile advertisements and promotions "routinely target" Metro. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 64 and therefore deny these allegations.

Response to Paragraph No. 65:

Defendants admit that Sprint competes with T-Mobile, as well as with many other players, including AT&T, Verizon, regional wireless-services providers, MVNOs, and cable companies. To the extent the allegations in the second sentence of Paragraph No. 65 rely on Sprint documents, those documents speak for themselves. To the extent the allegations do not accurately reflect those documents, Defendants deny the allegations in the second sentence of Paragraph No. 65. Defendants note that Boost and Metro will continue to compete at the close of the transaction because the parties have committed to divest Boost to DISH. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 65 and therefore deny these allegations.

Response to Paragraph No. 66:

Defendants admit that Sprint competes against T-Mobile, as well as the many other competitors that offer wireless services, including AT&T, Verizon, regional wireless-services providers, MVNOs, and cable companies. Defendants also admit that Sprint competes against all of the companies just mentioned based on a number of factors, including network quality,

pricing for cellular handsets, and add-ons offered through partnerships with companies like Netflix and Hulu, among other areas.

Response to Paragraph No. 67:

      Defendants deny the allegations in Paragraph No. 67.

Response to Paragraph No. 68:

      Defendants admit that Sprint sells some products and services through retail stores, among other channels. Defendants admit that Sprint retail stores are sometimes located on the same block or in the same shopping center as the retail stores of T-Mobile, AT&T, Verizon, regional wireless-services providers, MVNOs, and cable companies. Similarly, Defendants admit that Boost Mobile retail stores are sometimes located on the same block or in the same shopping center as the retail stores of AT&T's Cricket Wireless, Verizon, TracFone, and a variety of other service providers. Defendants deny the remaining allegations in Paragraph No. 68.

### C.      The Merger Would Eliminate Aggressive Competition From Sprint

Response to Paragraph No. 69:

      Defendants admit that Sprint generally competes for wireless-service customers and that it monitors publicly available information regarding the promotions of its many competitors. Defendants also admit that Sprint offered an unlimited talk, text, and data wireless plan, without mobile hotspot service, for $15 per month during a short promotion window in June 2018, through only its online and phone-based channels, for customers who brought their own device and were willing to port their number. Defendants deny the remaining allegations in Paragraph No. 69, including any suggestion that Sprint always offers the lowest-price rate plan. While Sprint has at times offered promotional rates as a way to attract new customers, these offers have

ultimately failed to drive sustained subscriber share and revenue growth, and they have limited Sprint's ability to invest in its network.

Response to Paragraph No. 70:

To the extent the allegations in Paragraph No. 70 rely on publicly available documents, those documents speak for themselves. To the extent that the allegations in Paragraph No. 70 do not accurately reflect those documents, Defendants deny the allegations in Paragraph No. 70. Defendants note that Sprint *lost* over 500,000 postpaid handset subscribers in FY2018, and its total company service revenue has declined every year since FY2013.

Response to Paragraph No. 71:

Defendants admit that Sprint holds *on average* 160 MHz of 2.5 GHz spectrum in each CMA, but Defendants note that Sprint does not have 160 MHz in all of the Top 100 CMAs (for example, Sprint does not have 160 MHz of spectrum in New York City, CMA No. 1). Defendants further note that such spectrum is not in itself sufficient to deploy a viable nationwide 5G network. Sprint suffers from a severe lack of low-band spectrum, including 600 MHz band spectrum, of which T-Mobile has a significant amount. Low-band spectrum propagates better than Sprint's 2.5 GHz spectrum, meaning that it has greater coverage than Sprint's 2.5 GHz spectrum. In order to build a nationwide 5G network, Sprint would need a significant amount of low-band spectrum, which it does not have. Sprint therefore cannot rely on its current spectrum holdings to build a nationwide, ubiquitous, and geographically contiguous 5G network.

Response to Paragraph No. 72:

Defendants admit that Sprint has begun deploying 5G in certain limited geographic areas in the United States. To the extent the allegations in Paragraph No. 72 rely on publicly available

documents, particularly a tweet from Mr. Claure's Twitter account, those documents speak for themselves. To the extent that the allegations in Paragraph No. 72 do not accurately reflect those documents, Defendants deny the allegations in Paragraph No. 72. Defendants deny the remaining allegations in Paragraph No. 72.

Response to Paragraph No. 73:

Defendants admit that the roaming agreement referenced in Paragraph No. 73 provides Sprint's customers limited access to T-Mobile's network pursuant to the terms set forth therein, but Defendants deny the remaining allegations in Paragraph No. 73. Roaming agreements alone will not solve Sprint's network-experience issues. Roaming agreements are more expensive for Sprint than operating on its own wireless-network infrastructure and lead to a poorer experience for Sprint's customers. Further, the roaming agreement with T-Mobile is limited in both scope and duration, and it is not a substitute for the efficiencies and synergies that would result from a full integration of the two companies' networks.

Response to Paragraph No. 74:

Defendants deny the allegations in Paragraph No. 74. In a world absent the merger, Sprint's limited network assets (particularly its lack of low-band spectrum), its lack of scale, and its challenges in generating positive cash flow will constrain its ability to offer low prices or enhanced network performance.

Response to Paragraph No. 75:

Defendants admit that post-merger, the Sprint brand will cease to operate independently. Defendants deny the remaining allegations in Paragraph No. 75.

### D. An "Un-Carrier" Strategy Would Not Be Profit Maximizing for the Combined Company

Response to Paragraph No. 76:

Defendants admit that Sprint competes against T-Mobile, as well as the many other competitors that offer wireless services, including AT&T, Verizon, regional wireless-services providers, MVNOs, and cable companies. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 76 and therefore deny these allegations.

Response to Paragraph No. 77:

Defendants deny the allegations in Paragraph No. 77.

Response to Paragraph No. 78:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph No. 78 and therefore deny these allegations. Defendants deny the remaining allegations in Paragraph No. 78.

Response to Paragraph No. 79:

Defendants admit that the combined Sprint and T-Mobile would have an increased base, increased profits, and increased cash flow than either would as a standalone company. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation regarding Mr. Legere's statement and therefore deny the allegation. Defendants deny the remaining allegations in Paragraph No. 79.

**The Merger Would Reduce Competition Between all MNOs and Increase the Potential for Coordinated Effects in the Market for Retail Mobile Wireless Telecommunications Services**

Response to Paragraph No. 80:

Defendants admit that Sprint, T-Mobile, AT&T, Verizon, as well as MVNOs, regional wireless-service providers, and cable companies, compete against each other on multiple dimensions, including price, network quality, network coverage, and features. Defendants admit that AT&T, Verizon, T-Mobile, and Sprint have reported wireless service revenues of more than $160 billion. Defendants deny the remaining allegations in Paragraph No. 80.

Response to Paragraph No. 81:

Defendants deny the allegations in Paragraph No. 81.

Response to Paragraph No. 82:

Defendants admit that wireless carriers offer some pricing information in stores, online, and in television, radio, print, and online advertisements. Defendants deny the remaining allegations in Paragraph No. 82.

Response to Paragraph No. 83:

Defendants deny the allegations in Paragraph No. 83 to the extent that they apply to Sprint's pricing or other service terms. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other carriers and therefore deny these allegations.

Response to Paragraph No. 84:

To the extent the allegations in the second sentence of Paragraph No. 84 rely on a Sprint document, that document speaks for itself. To the extent the allegations in the second sentence of Paragraph No. 84 do not accurately reflect that document, Defendants deny the allegations in

the second sentence of Paragraph No. 84.  Defendants note that the former Sprint employee who authored the quoted document had no pricing responsibility and that the quoted passages do not reflect the opinion or understanding of Sprint.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the cited quotations of T-Mobile officers and therefore deny those allegations.  Defendants deny the remaining allegations in Paragraph No. 84.

Response to Paragraph No. 85:

Defendants admit that Sprint has pursued competitive strategies, but Defendants deny that "price signaling" has occurred or "led to higher prices for consumers."  Defendants admit that Verizon has announced that it will offer "Go Unlimited" plans for customers 55 and older at $60 per month for one line and $80 per month for two lines, that T-Mobile announced that it would raise its monthly price from $60 for two lines to $70 for its plan offered to customers 55 years and older on March 8, 2018, and that Sprint announced that it will introduce its own Unlimited 55+ plan at the higher T-Mobile price point in May 2018.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations about T-Mobile's competitive strategies and therefore deny these allegations.  Defendants deny the remaining allegations in Paragraph No. 85.

Response to Paragraph No. 86:

Defendants deny the allegations in Paragraph No. 86.

**F.    The Merger Would Reduce Competition in the Sale of Access to MVNOs, Harming Retail Consumers**

Response to Paragraph No. 87:

Defendants admit that operating as an MVNO, by Plaintiffs' definition, requires an agreement to purchase wholesale capacity from at least one MNO, but Defendants note that the

largest MVNO in the country, TracFone, which accounts for over 21 million wireless subscribers, purchases a significant amount of its services from AT&T and Verizon.  In addition, other successful MVNOs, including Comcast and Charter, which have won a significant share of industry gross additions since launching their services, do not rely on the Sprint or T-Mobile networks to offer their wireless services.  Defendants deny the remaining allegations in Paragraph No. 87.

Response to Paragraph No. 88:

To the extent the allegations in the first sentence of Paragraph No. 88 rely on testimony, the testimony speaks for itself.  To the extent the allegations in the first sentence of Paragraph No. 88 do not accurately reflect the testimony, Defendants deny the allegations.  Defendants admit that Sprint provides services to MVNOs.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 88 and therefore deny these allegations.

Response to Paragraph No. 89:

Defendants admit that Sprint has an MVNO agreement with Altice. To the extent the allegations in Paragraph No. 89 rely on the MVNO agreement, the document speaks for itself. To the extent the allegations in Paragraph No. 89 do not accurately reflect the MVNO agreement, Defendants deny the allegations.  Defendants also admit that at one time Sprint had entered negotiations with Comcast and Charter with respect to a potential MVNO arrangement, but Defendants note that no agreement on terms had been reached prior to the announcement of the merger.  Defendants deny the remaining allegations in Paragraph No. 89.

Response to Paragraph No. 90:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 90 and therefore deny these allegations.

Response to Paragraph No. 91:

Defendants deny the allegations in Paragraph No. 91.

### G.    The Merger Would Create Substantial Upward Pricing Pressure

Response to Paragraph No. 92:

Defendants deny the allegations in Paragraph No. 92.

Response to Paragraph No. 93:

To the extent the allegations in Paragraph No. 93 rely on publicly available documents, those documents speak for themselves.  To the extent that the allegations in Paragraph No. 93 do not accurately reflect those documents, Defendants deny the allegations in Paragraph No. 93. Defendants further deny that studies in other countries have any relevance to this case, deny that the selective assertions about studies in other countries in Paragraph No. 93 provide a complete or accurate picture, and deny the remaining allegations in Paragraph No. 93.

### H.    Significant Barriers to Entry

Response to Paragraph No. 94:

Defendants deny the allegations in Paragraph No. 94.  Defendants note that on July 26, 2019, DISH issued a press release stating, "DISH Network will enter the U.S. wireless market as the fourth nationwide facilities-based network competitor" and that DISH has made legally binding commitments to do so.

I.      **Claimed Efficiencies Are Not Cognizable and Do Not Outweigh
        Anticompetitive Effects**

Response to Paragraph No. 95:

Defendants deny the allegations in Paragraph No. 95.

Response to Paragraph No. 96:

Defendants deny the allegations in Paragraph No. 96.

Response to Paragraph No. 97:

Defendants deny the allegations in Paragraph No. 97.

Response to Paragraph No. 98:

Defendants admit that Sprint has launched 5G in a few select cities. To the extent the
allegations in the sixth sentence and the last sentence of Paragraph No. 98 rely on publicly
available documents, those documents speak for themselves. To the extent the allegations in the
sixth sentence and the last sentence of Paragraph No. 98 do not accurately reflect those
documents, Defendants deny the allegations. Defendants lack knowledge or information
sufficient to form a belief as to the truth of the allegations regarding Mr. Legere's statements and
therefore deny the allegations. Defendants deny the remaining allegations in Paragraph No. 98.
While each of Sprint and T-Mobile are launching 5G services, neither company could provide
the superior performance characteristics of New T-Mobile. While Sprint plans to launch 5G in
nine U.S. cities by the end of 2019, it is constrained from deploying a nationwide, geographically
ubiquitous 5G network because of its lack of sufficient low-band spectrum and because the
propagation characteristics of its 2.5 GHz spectrum restrict its ability to cover wide geographic
areas, including many rural areas, and limit its in-building coverage.

**J.      Proposed Commitments Made to the FCC Are Insufficient To Protect Competition**

Response to Paragraph No. 99:

The allegations in Paragraph No. 99 are legal conclusions and therefore do not require a response. To the extent a response is required, Defendants deny the allegations in Paragraph No. 99.

Response to Paragraph No. 100:

Defendants deny that the merger will result in harm to competition or consumers, or that the FCC commitments do not guarantee the benefits of the merger. Defendants deny the remaining allegations in Paragraph No. 100.

Response to Paragraph No. 101:

Defendants deny that the merger will cause harm and deny that the network-build commitments do not guarantee the benefits of the transaction. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding T-Mobile's plans for in-home broadband service and therefore deny these allegations. Defendants deny the remaining allegations in Paragraph No. 101.

Response to Paragraph No. 102:

Defendants deny the allegations in Paragraph No. 102.

Response to Paragraph No. 103:

Defendants admit that Sprint offers promotions. Defendants deny that the merger will result in harm to competition or consumers and deny that the pricing commitment made to the FCC does not guarantee the benefits of the merger. Defendants deny the remaining allegations in Paragraph No. 103.

<u>Response to Paragraph No. 104</u>:

Defendants deny that the merger will result in harm to competition and deny the remaining allegations in Paragraph No. 104.

<u>Response to Paragraph No. 105</u>:

Defendants deny that the merger will result in harm to competition and deny the remaining allegations in Paragraph No. 105.

**B.      The Proposed DISH Settlement Is Insufficient To Protect Competition**

<u>Response to Paragraph No. 106</u>:

Defendants admit the Proposed DISH settlement was filed less than three weeks before the filing of the Complaint.  Defendants lack knowledge or information sufficient to admit or otherwise deny the allegations in Paragraph No. 106 and on that basis deny the allegations.

<u>Response to Paragraph No. 107</u>:

Defendants deny the allegations in Paragraph No. 107.

<u>Response to Paragraph No. 108</u>:

Defendants admit DISH has made commitments to the U.S. Department of Justice and the FCC, including commitments to build network infrastructure and offer certain services. Defendants otherwise deny the allegations in Paragraph No. 108.

**VII.      VIOLATION ALLEGED**

<u>Response to Paragraph No. 109</u>:

Defendants deny the allegations in Paragraph No. 109.

<u>Response to Paragraph No. 110</u>:

Defendants deny the allegations in Paragraph No. 110.

## VIII.     REQUESTED RELIEF

Response to Paragraph No. 111:

The allegations in Paragraph No. 111 are requests for relief to which no response is required.  To the extent a response is required, Defendants deny these allegations.

## DEFENSES

Without assuming the burden of proof that they would otherwise not bear under applicable law, Defendants assert the following defense.  Defendants reserve the right to assert and rely upon any other defenses that may become available or known to Defendants throughout the course of this action, and to amend, or seek to amend, their answer or defenses.

**DEFENSE:**  The Complaint fails to state a claim upon which relief can be granted.

Dated: October 2, 2019                    Respectfully submitted,

/s/ Steven Sunshine
Steven C. Sunshine (steve.sunshine@skadden.com)
Julia K. York (julia.york@skadden.com) (*pro hac vice*)
Skadden, Arps, Slate,  Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005
Telephone:  (202) 371-7860

Matthew Hendrickson (matthew.hendrickson@skadden.com)
Karen Hoffman Lent (karen.lent@skadden.com)
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036
Telephone:  (212) 735-2066

*Attorneys for Defendant Sprint Corporation*

/s/ Grant J. Esposito (with consent)
Grant J. Esposito (gesposito@mofo.com)
David J. Fioccola (dfioccola@mofo.com)
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
Telephone:  (212) 468-8000

David L. Meyer (dmeyer@mofo.com) (*pro hac vice*)
Bradley S. Lui (blui@mofo.com) (*pro hac vice*)
Morrison & Foerster LLP
2000 Pennsylvania Avenue NW, Suite 6000
Washington, DC 20006
Telephone:  (202) 887-1500

*Attorneys for Defendants SoftBank Group Corp. and*
*Sprint Corporation*