UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK *et al.*, *Plaintiffs*, v. DEUTSCHE TELEKOM AG *et al.*, *Defendants*. | Case No.: 1:19-cv-5434-VM-RWL<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE
TO EXCLUDE EVIDENCE REGARDING STOCK PRICES**

ny-1790559

i

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii
INTRODUCTION ................................................................................................................ 1
LEGAL STANDARD ........................................................................................................... 2
ARGUMENT ........................................................................................................................ 3
I.    DR. SHAPIRO "CHERRY PICKED" DATA ......................................................... 3
II.    DR. SHAPIRO'S ANALYSIS IS UNRELIABLE .................................................. 4
CONCLUSION ..................................................................................................................... 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Algarin v. New York City Dep't of Correction*,
   460 F. Supp. 2d 469 (S.D.N.Y. 2006), *aff'd*, 267 Fed. Appx. 24 (2008) .................................5

*CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*,
   815 F. Supp. 2d 673 (S.D.N.Y. 2011)..............................................................................2

*Daubert v. Merrill Dow Pharms., Inc.*,
   509 U.S. 579 (1993), *cert. denied*, 516 U.S. 869 (1995) ...............................................2, 4, 5, 6

*E.E.O.C. v. Bloomberg L.P.*,
   No. 07 Civ. 8383 (LAP), 2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010)............................5, 6

*Faulkner v. Arista Records LLC*,
   46 F. Supp. 3d 365 (S.D.N.Y. 2014)................................................................................3, 4

*In re Fresh Del Monte Pineapples Antitrust Litig.*,
   No. 04-md-1628 (RMB)(MHD), 2009 WL 3241401 (S.D.N.Y. Sept. 30,
   2009), *aff'd*, 407 Fed. Appx. 520 (2010) .......................................................................3

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)..........................................................................................................3

*Laumann v. Nat'l Hockey League*,
   117 F. Supp. 3d 299 (S.D.N.Y. 2015)..............................................................................3

*Lava Trading, Inc. v. Hartford Fire Ins. Co.*,
   No. 03 Civ. 7037 (PKC), 2005 WL 4684238 (S.D.N.Y. Apr. 11, 2005) ..........................3

*Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y.2007)..............................................................................6

*Mango v. BuzzFeed, Inc.*,
   316 F. Supp.3d 811 (S.D.N.Y. 2018)...............................................................................2

*In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,
   341 F. Supp. 3d 213 (S.D.N.Y. 2018)..............................................................................3

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir. 1997)...............................................................................................5

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

**Cases**

*Reed Constr. Data, Inc. v. McGraw-Hill Cos., Inc.*,
    49 F. Supp. 3d 385 (S.D.N.Y. 2014), *aff'd*, 638 Fed. Appx. 43 (2016) ...................3

*In re the Bear Stearns Cos., Inc. Sec.*,
    No. 08 MDL 1963 (RWS), 2016 WL 4098385 (S.D.N.Y. July 25, 2016) ..............5

*United States v. Percoco*,
    No. 16-CR-776 (VEC), 2018 WL 879499 (S.D.N.Y. Feb. 13, 2018) .....................3

*Wills v. Amerada Hess Corp.*,
    379 F.3d 32 (2d Cir.2004), *cert. denied*, 546 U.S. 822 (2005)..................................6

**Other Authorities**

B. Espen Eckbo, "Horizontal Mergers, Collusion, and Stockholder Wealth,"
    *Journal of Financial Economics,* 11(1–4), 1983 ........................................................6

E. Han Kim and Vijay Singal, "Mergers and Market Power: Evidence from the
    Airline Industry," *The American Economic Review*, 83(3), 1993 ............................6

Fed. R. Evid. 702 .................................................................................................2, 4, 5, 6

Gregory J. Werden and Michael A. Williams, "The Role of Stock Market Studies
    in Formulating Antitrust Policy Toward Horizontal Mergers," *Quarterly
    Journal of Business and Economics*, 28(4), 1989........................................................6

Robert Stillman, "Examining Antitrust Policy Towards Horizontal Mergers,"
    *Journal of Financial Economics,* 11(1–4), 1983 ........................................................6

**INTRODUCTION**

Plaintiffs intend to argue that the proposed merger may result in anti-competitive effects based on Dr. Carl Shapiro's ▮▮▮▮▮ ▮▮▮▮▮ Dr. Shapiro's review, however, is unreliable, lacks a sound methodological foundation, and is therefore inadmissible. Specifically, Dr. Shapiro ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮. Looking solely at that information—but ignoring other merger-related articles and omitting a reliable methodology—he claims that ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮[1] That purported "stock price" opinion and any related evidence should be excluded.

First, Dr. Shapiro cherry-picks inputs, ignoring other available data points, and contrary investment analysis reports that conclude the merger would be *pro*-competitive. Second, Dr. Shapiro's supposed method for evaluating stock price reactions is unreliable: He fails to perform any statistical analysis that controls for the many factors affecting stock prices of highly liquid securities. Stock price movements alone are not a proxy for evidence of what unidentified investors thought about anything, let alone the competitive effects of a merger. This is particularly true since the opinion Dr. Shapiro seeks to reach—▮▮▮▮▮ ▮▮▮▮▮—is directly contradicted by AT&T's ***opposition to the merger***. Finally, the academic literature that Dr. Shapiro cites undermines the fundamental premise of his "stock price" opinion.

---

[1] Fioccola Decl. Ex. A (Expert Report of Dr. Carl Shapiro, September 11, 2019 (Shapiro Initial Report), ¶ 217).

At heart, looking at what happened to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is useless to the Court in deciding the issues in this case. This "analysis" falls far short of what courts consider to be reliable expert testimony. The Court should therefore exclude Dr. Shapiro's purported "stock price" analysis and any other evidence concerning it.

## LEGAL STANDARD

"'The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Mango v. BuzzFeed, Inc.*, 316 F. Supp.3d 811, 812 (S.D.N.Y. 2018) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). It is well-settled that, in order to be admissible, expert testimony must be "based on sufficient facts or data" and the "product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d); *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993), *cert. denied*, 516 U.S. 869 (1995). Although the need to exclude "junk science" is less of a concern in a bench trial, this Court still exercises a critical "gatekeeping" function and Defendants make this motion to be efficient and not waste time at trial arguing about the proper scope of Dr. Shapiro's expert testimony.[2]

## ARGUMENT

**I.    DR. SHAPIRO "CHERRY PICKED" DATA.**

By selectively choosing only ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] *See CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673, 676 (S.D.N.Y. 2011) ("[a] trial court must decide whether a qualified expert's testimony rests on a reliable foundation, or is simply based on 'subjective believe or unsupported speculation.'") (quoting *Daubert*, 509 U.S. at 5479).

[REDACTED] while ignoring data and events that would undermine his opinions, Dr. Shapiro rigged his analysis to yield his desired outcome. Such an approach dooms his opinion, because "the law is clear: expert opinions are inadmissible if they are not 'based on sufficient facts or data.'" *Laumann v. Nat'l Hockey League*, 117 F. Supp. 3d 299, 315 (S.D.N.Y. 2015) (quoting Fed. R. Evid. 702(b)). As the Supreme Court has held, an expert's testimony should be excluded if the district court "conclude[s] that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146–47 (1997). Thus, courts repeatedly exclude expert testimony where, as here, the expert cherry-picks data.[3] Similarly, courts exclude experts who fail to account for relevant data in their analyses.[4]

Dr. Shapiro's fundamental hypothesis is that [REDACTED]. To support that opinion, Dr. Shapiro completely ignores—without explanation—the most high profile and significant events related to the merger. For example, Dr. Shapiro's clients, the plaintiff States, filed a lawsuit to block this merger on June 11, 2019. Dr. Shapiro surely knew about this event, and surely knew that this was not a good day for those who want the deal to close. [REDACTED]

---

[3] *See In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 296 (S.D.N.Y. 2018) (excluding expert testimony because the "use of evidence was impermissibly selective" and his "cherry-picking approach is at odds with principles of sound science."); *Reed Constr. Data, Inc. v. McGraw-Hill Cos., Inc.*, 49 F. Supp. 3d 385, 400 (S.D.N.Y. 2014), *aff'd*, 638 Fed. Appx. 43 (2016) (a "regression analyst may not 'cherry-pick' the time-frame or data points so as to make her ultimate conclusion stronger.") (citation omitted); *United States v. Percoco*, No. 16-CR-776 (VEC), 2018 WL 879499, at *8 (S.D.N.Y. Feb. 13, 2018) (excluding expert's testimony for, among other things, "cherry-pick[ing] jobs from the databases . . .").

[4] *See In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 04-md-1628 (RMB)(MHD), 2009 WL 3241401, at *7-8 (S.D.N.Y. Sept. 30, 2009), *aff'd*, 407 Fed. Appx. 520 (2010) (excluding expert's testimony because of its insufficient factual basis and unreliability, including overlooking relevant facts.); *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, No. 03 Civ. 7037 (PKC), 2005 WL 4684238, at 2 (S.D.N.Y. Apr. 11, 2005) (excluding expert report, in part, for ignoring the existence of actual revenue data.); *Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 381 (S.D.N.Y. 2014) (expert's "failure initially to review [] many categories of records, and his disregard of such relevant records after his belated review indicate that his methodology was aimed at achieving one result.").

████████████████████████████████████ However, both companies' stock prices went up that day.[5] The sound application of economics would grapple with this inconsistency, but Dr. Shapiro just pretends that it never happened. Similarly, on the day Sprint and T-Mobile publicly announced the merger, Dr. Shapiro's hypothesis suggests that Verizon and AT&T's stock prices should have soared. Again, the opposite occurred: Verizon's stock declined roughly 5% and AT&T's stock declined roughly 1% the next trading day.[6]

Furthermore, Dr. Shapiro's "study" fails to account for significant DOJ and FCC remedies that were only made public on July 26, 2019, more than a month after ████████ ████████████████████.[7] Dr. Shapiro's disregard of this highly relevant fact "indicate[s] that his methodology was aimed at achieving one result." *Faulkner*, 46 F. Supp. 3d at 381. In his deposition, Dr. Shapiro even conceded that one of those remedies, DISH's emergence, made it less likely that anti-competitive coordination would occur. Based on this fatal flaw alone, his "stock price" opinion should be excluded.

## II. DR. SHAPIRO'S ANALYSIS IS UNRELIABLE.

Expert testimony must "rest on a reliable foundation." *Daubert*, 509 U.S. at 597. This requires the expert's reasoning or methodology to be scientifically valid. *Id.* at 592-93. In determining whether an expert's opinion is scientifically sound, the district court can consider whether: a scientific theory or technique can be (or has been) tested, or has been subjected to peer review and publication; there is a known or potential error rate; and the theory or technique is generally accepted in the relevant scientific community. *See id.* at 594-95; Fed. R. Evid. 702;

---

[5] Fioccola Decl., Ex. E (Expert Rebuttal Report of John Asker, Ph.D., (Asker Rebuttal), Ex. 13.

[6] Fioccola Decl., Ex. F (Verizon and AT&T stock prices, April 27, 2018 – April 30, 2018). The merger was announced on April 29, 2018.

[7] Shapiro Initial Report, ¶ 215.

Fed. R. Evid. 702 Advisory Committee's Note (2000). Each of these factors establishes that Dr. Shapiro's stock market analysis lacks sufficient reliability to be admissible.

Dr. Shapiro performed no meaningful statistical analysis to render his analysis reliable because, among other defects, he failed to control for myriad factors that move stock prices, especially for large companies like Verizon and AT&T with liquid securities.[8] His analysis is therefore unreliable and of no use to the Court.[9] In *Bear Stearns,* Judge Sweet excluded expert testimony that purportedly explained changes in stock prices based on the dissemination of information into the market before public disclosures, in part because the expert's measurements were not statistically significant. *In re the Bear Stearns Cos., Inc. Sec.*, No. 08 MDL 1963 (RWS), 2016 WL 4098385, at *11 (S.D.N.Y. July 25, 2016). As the court explained, the expert provided "no evidence that any of the stock price declines … were due to leakage rather than other factors" such a non-fraud related news, for which the expert failed to control. *Id.* Dr. Shapiro's purported analysis is similarly deficient and should be excluded. *See, e.g., Raskin v. Wyatt Co.*, 125 F.3d 55, 67-68 (2d Cir. 1997) (excluding economist's report for failing to control for factors that could have impacted his conclusions).

Because an expert's testimony must be the "product of reliable principles and methods," Fed. R. Evid. 702, courts consider whether the expert's methodology has support in the relevant academic literature.[10] Dr. Shapiro's "stock price" opinion lacks that indicia of reliability.

---

[8] Shapiro Initial Report, ¶¶ 212-213; Fioccola Decl. Ex. G (Reply Expert Report of Professor Carl Shapiro, November 4, 2019, ¶ 172.)

[9] *See, e.g., Algarin v. New York City Dep't of Correction,* 460 F. Supp. 2d 469, 477 (S.D.N.Y. 2006), *aff'd*, 267 Fed. Appx. 24 (2008) ("Taken as a whole, [the expert's] report is not based on reliable principles and methods and is not helpful to the task at hand. Accordingly the Court finds [the expert's] report inadmissible under *Daubert . . .*")

[10] *E.E.O.C. v. Bloomberg L.P.*, No. 07 Civ. 8383 (LAP), 2010 WL 3466370, at *12 (S.D.N.Y. Aug. 31, 2010)

██████████████████████████████████

████████████████[11] But according to the academic literature that Dr. Shapiro cites, "stock market evidence is *not* a reliable indicator of the collusive effects of individual mergers" and "the tests based on stock-market prices are at best indirect and probably weak."[12] Further, the academic literature on which Dr. Shapiro relies consistently notes that showing that rival firms' stock prices increased or decreased with the probability of a merger is *"not sufficient* to establish even that the market expects the merger to have collusive, anticompetitive effects."[13] Dr. Shapiro's stock price analysis therefore should be excluded for this independent reason as well.[14]

## CONCLUSION

For all of the foregoing reasons, Dr. Shapiro's purported "stock price" opinion and any evidence about stock prices should be excluded, and trial time not wasted on it.

---

[11] Shapiro Initial Report, ¶ 217.

[12] Gregory J. Werden and Michael A. Williams, "The Role of Stock Market Studies in Formulating Antitrust Policy Toward Horizontal Mergers," *Quarterly Journal of Business and Economics*, 28(4), 1989, p. 4 (emphasis added). *See also* E. Han Kim and Vijay Singal, "Mergers and Market Power: Evidence from the Airline Industry," *The American Economic Review*, 83(3), 1993, pp. 549–569 at p. 551 ("In short, the tests based on stock-market prices are at best indirect and probably weak. A more direct test of market power requires an examination of product price changes.").

[13] B. Espen Eckbo, "Horizontal Mergers, Collusion, and Stockholder Wealth," *Journal of Financial Economics,* 11(1–4), 1983, pp. 241–273 at p. 244 (emphasis added); *see also* Robert Stillman, "Examining Antitrust Policy Towards Horizontal Mergers," *Journal of Financial Economics,* 11(1–4), 1983 at p. 228 ("It is worth noting here, however, that the pattern of abnormal returns just described, although necessary for a horizontal merger to be socially inefficient, is not sufficient.").

[14] *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 49 (2d Cir.2004), *cert. denied*, 546 U.S. 822 (2005) (affirming district court's exclusion of expert testimony where the expert conceded that his theory of causation was "controversial" and where district court found that another theory of causation was more generally accepted in the scientific community); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 637 (S.D.N.Y.2007) (expert who failed to provide "support in the literature or in any other survey for the method he used" and his "attempt to solve a problem ... with an untested theory [does] not meet the standards of Rule 702 and *Daubert*" ); *E.E.O.C.*, 2010 WL 3466370, at *12 (granting motion to exclude expert report that was "unsupported by any professional literature or other source that would suggest his methodology is recognized by other statisticians.").

Dated: New York, New York
November 15, 2019

MORRISON & FOERSTER LLP

BY:    /s/ Grant J. Esposito
       Grant J. Esposito
       David J. Fioccola
       Adam J. Hunt
       250 West 55th Street
       New York, NY 10019
       Tel.: (212) 468-8000
       Fax: (212) 468-7900
       E-mail: gesposito@mofo.com
              dfioccola@mofo.com
              adamhunt@mofo.com

David L. Meyer (*pro hac vice*)
Bradley S. Lui (*pro hac vice*)
2000 Pennsylvania Avenue, NW,
Suite 6000
Washington, D.C. 20006-1888
Tel.: (202) 887-1500
Fax: (202) 887-0763
E-mail: dmeyer@mofo.com
         blui@mofo.com

*Counsel for Defendants SoftBank Group Corp. and Sprint Corporation*

| | |
|---|---|
| WILMER CUTLER PICKERING HALE AND DORR LLP<br><br>BY:     /s/ Hallie B. Levin<br>Hallie B. Levin<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007<br>Tel.: (212) 295-6710<br>Fax: (212) 230-8888<br>E-mail: hallie.levin@wilmerhale.com<br><br>*Counsel for Defendant T-Mobile US, Inc. and Deutsche Telekom AG* | GIBSON, DUNN & CRUTCHER LLP<br><br>BY:     /s/ Richard G. Parker<br>Richard G. Parker (*pro hac vice*)<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C. 20036-5306<br>Tel.: (202) 955-8503<br>Fax: (202) 530-9518<br>E-mail: rparker@gibsondunn.com<br><br>*Counsel for Defendant Deutsche Telekom AG* |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br><br>BY:     /s/ Steven C. Sunshine<br>Steven C. Sunshine<br>Julia K. York (*pro hac vice*)<br>1440 New York Avenue NW<br>Washington, D.C. 20005<br>Tel.: (202) 371-7000<br>Fax: (202) 393-5760<br>E-mail: steve.sunshine@skadden.com<br>        julia.york@skadden.com<br><br>Karen Hoffman Lent<br>4 Times Square<br>New York, NY 10036<br>Tel.: (212) 735-3000<br>Fax: (212) 735-2000<br>E-mail: karen.lent@skadden.com<br><br>*Counsel for Defendant Sprint Corp.* | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>BY:     /s/ George S. Cary<br>George S. Cary (*pro hac vice*)<br>David I. Gelfand (*pro hac vice*)<br>2112 Pennsylvania Ave NW<br>Washington, D.C. 20037<br>Tel.: (202) 974-1500<br>Fax: (202) 974-1999<br>E-mail: gcary@cgsh.com<br>        dgelfand@cgsh.com<br><br>*Counsel for Defendant T-Mobile US, Inc. and Deutsche Telekom AG* |