USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________
DATE FILED: 12/2/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, et al.,

Plaintiffs,

- against -

DEUTSCHE TELEKOM AG, et al.,

Defendants.

19 Civ. 5434 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiffs, the States of New York, California, Connecticut, Hawaii, Illinois, Maryland, Michigan, Minnesota, Oregon, and Wisconsin, the Commonwealths of Massachusetts, Pennsylvania, and Virginia, and the District of Columbia (collectively, the "Plaintiff States"), acting by and through their respective Offices of their Attorneys General, brought this action against Deutsche Telekom AG, T-Mobile US, Inc. ("T-Mobile"), Softbank Group Corp., and Sprint Corporation ("Sprint," and collectively with the foregoing defendants, "Defendants") seeking to enjoin the proposed acquisition of Sprint by T-Mobile (the "Proposed Merger"). Plaintiff States claim that the Proposed Merger would produce an effect of substantially lessening competition in the market for retail mobile wireless telecommunications services, in violation of Section 7 of the Clayton Act, codified at 15 U.S.C. Section 18.

Defendants counter that the Proposed Merger would in fact increase competition in the relevant United States wireless markets and that Plaintiff States have thus failed to state a claim for relief.

A bench trial is scheduled before this Court from December 9 through December 20, 2019. Defendants have filed three motions in limine seeking to preclude Plaintiff States from presenting at trial: (1) evidence of foreign market studies and related testimony and opinions (see "First Motion," Dkt. No. 253); (2) evidence related to and including the "Stock Price Opinion" of Dr. Carl Shapiro ("Shapiro"), an expert for Plaintiff States (see "Second Motion," Dkt. No. 256); and (3) any testimony of legal opinions in this action, including particularly any testimony by law professor Catherine Sandoval ("Sandoval") regarding the procedures of the Federal Communications Commission ("FCC") and future action it may take with respect to the Proposed Merger (see "Third Motion," Dkt. No. 263). For the following reasons, the Court GRANTS the First and Second Motions and defers decision on the Third Motion until trial commences.

## I. LEGAL STANDARDS

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of

trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted). A court's determination of a motion in limine is preliminary and may be subject to change as the case unfolds. See Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008).

Federal Rule of Evidence ("FRE") 402 provides that relevant evidence is generally admissible, and FRE 403 provides that evidence that is relevant may nonetheless be excluded if its probative value is substantially outweighed by, among other considerations, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Under FRE 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

FRE 702 governs the admissibility of expert testimony and provides that a qualified expert may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in

> issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A trial court must decide whether a qualified expert's testimony rests on a reliable foundation, or is simply based on "subjective belief or unsupported speculation." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 590 (1993). If expert testimony is speculative or conjectural, it should be excluded. See Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996). In this regard, a court may exclude expert evidence where it concludes "that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Additionally, an expert "may not give testimony stating ultimate legal conclusions" or otherwise usurp the role of the trial judge. In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., MDL No. 1358, 2008 WL 1971538, at *13 (S.D.N.Y. May 7, 2008) (quoting United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1988)).

## II. FIRST MOTION

Defendants request that the Court exclude from trial any materials or expert testimony regarding the market structure, competitiveness, or competitive effects of

mergers in wireless communications markets located outside of the United States, including particularly markets in Canada and Europe. (See "Defs. First Mem. of Law," Dkt No. 254.) They argue that introducing evidence of mergers in foreign markets would risk time-consuming mini-trials regarding the comparability and relevance of those foreign mergers to the Proposed Merger, and that consideration of the foreign mergers at trial would be of no probative value because of their unique factual circumstances. (See id. at 1-2, 4-5.) Defendants further argue that Shapiro has not laid out a reliable methodology to justify his consideration of studies involving foreign markets, and that he fails to analyze the specific factual circumstances at issue in those studies or their relevance to the present action. (See id. at 3.)

Plaintiff States oppose the First Motion, arguing that no case law supports the proposition that a court cannot consider out-of-market evidence to understand how a merger may affect the relevant market. (See "Pls. First Mem. Of Law" at 4, Dkt. No. 278.) Plaintiff States claim that such evidence is relevant because studies analyzing the effects of mergers in foreign wireless markets that reduce the number of competitors from four to three may be probative of the effects of the Proposed Merger, which would reduce

the number of major mobile network operators in the United States from four to three. (See id. at 2-3.) Plaintiff States add that Defendants' arguments regarding the reliability of Shapiro's analysis bear on the weight of the evidence rather than its admissibility. (See id. at 5.)

In reply, Defendants assert that while evidence from foreign markets is not necessarily irrelevant in all circumstances, considering such evidence would be inappropriate in this case because there is no basis to believe that conditions in foreign markets are similar enough to conditions in United States markets to render the foreign market evidence sufficiently relevant and probative. (See Defs. First Reply Mem. of Law, Dkt. No. 287, at 1.)

While the Court is not categorically barred from considering evidence of mergers in foreign markets, it will nevertheless exclude such evidence at this time. The Court finds that the relevance of wireless services mergers in foreign markets is dubious at best. Despite the apparent similarity between mergers in foreign and domestic markets involving a similar number of competitors, numerous salient factors, including market structure, consumer demographics, regulatory frameworks, and infrastructure may differ

significantly and likely yield only an apples-to-oranges comparison.

Even assuming that evidence of foreign wireless services mergers was relevant, though, the Court finds that the limited probative value of such evidence would be outweighed by the undue delay that would result from its consideration at trial. As Plaintiff States acknowledge, the results of studies regarding foreign mergers are not uniform (see Pls. First Mem. of Law at 3), and the admission of such evidence risks lengthy argument over the countless factors that render foreign mergers either comparable or incomparable, probative or not probative in relation to the Proposed Merger. The Court concludes that trial time would be better spent developing the evidence of the Proposed Merger's competitive effects that can be derived from the relevant United States markets at issue, rather than wasting time litigating whether and how mergers in foreign wireless markets might conceivably predict those competitive effects. Accordingly, the Court grants the First Motion.

## III. SECOND MOTION

In their Second Motion, Defendants seek to exclude as unreliable any evidence related to Shapiro's Stock Price Opinion, which evaluates changes in the stock prices of T-

Mobile and Sprint's major competitors, AT&T and Verizon, both shortly before and after notable news announcements regarding the Proposed Merger. (See Second Motion.) The Stock Price Opinion concludes that the Proposed Merger would be anticompetitive because the increases in AT&T and Verizon's stock prices after positive news events regarding the Proposed Merger indicate that the merger would increase the potential for higher prices and anticompetitive coordination in the market for wireless telecommunications services.

In particular, Defendants allege that Shapiro ignored without explanation how certain notable events including the filing of the instant lawsuit may have impacted the relevant stock prices, why Verizon and AT&T's stock prices did not increase upon the announcement of the allegedly anticompetitive Proposed Merger, and how the remedies negotiated between Defendants, FCC, and the United States Department of Justice ("DOJ") might cut against the Stock Price Opinion's conclusion regarding anti-competitive coordination. (See "Defs. Second Mem. of Law," Dkt. No. 257, at 3-4.) Defendants add that the methodology underlying the Stock Price Opinion is unreliable because it failed to control for myriad factors that might otherwise affect stock price, and because academic literature cited

by Shapiro states that the correlation between a merger's likelihood and rival firms' stock prices does not establish a merger's potentially anticompetitive effects with any meaningful degree of reliability. (See id. at 5-6.)

In opposition to the Second Motion, Plaintiff States argue that Shapiro's analysis is reliable and supported by academic literature, and that Defendants' concerns merely reflect the contrary views of their expert. (See "Pls. Second Mem. of Law" at 1, Dkt. No. 280.) Moreover, Plaintiff States contend that Shapiro did not ignore major events regarding the Proposed Merger because he relied on Bloomberg News' categorization of certain news events as "Hot Headlines" and drew his sample from that set of news events. (See id. at 3.) Plaintiff States further argue that Shapiro's analysis minimized the impact of other confounding factors on the stock prices at issue by selecting a narrow window of time in which to assess major news announcements' impacts on the stock prices of AT&T and Verizon, specifically the five minutes before and five minutes after each news event. (See id. at 3-4.) Plaintiff States add that Shapiro's reply report addresses Defendants' concerns, accounting for the news events they highlighted and testing the results for statistical significance. (See id. at 5.)

Defendants briefly reiterated their position in reply, criticizing Shapiro's methodological reliance on Bloomberg News articles and adding that efforts to gauge investors' views of the Proposed Merger's competitive impact are inappropriate in light of more direct evidence indicating that AT&T and Verizon would oppose the merger. (See "Defs. Second Reply. Mem. of Law," Dkt No. 291, at 1-2.)

Putting aside whether the Proposed Merger will have an anticompetitive effect and whether stock price movements could theoretically demonstrate that effect, the Court finds that the Stock Price Opinion does not rely on "sufficient facts or data" to justify the admission of related testimony and evidence under FRE 702. The Court is skeptical of the reliability of an opinion that extrapolates the likelihood of anticompetitive effects from between five to seven discrete news articles covering a period of well over a year. And although the narrow timeframe reviewed with respect to each news event was chosen in order to minimize the effect of confounding variables upon Shapiro's analysis, such a decision effectively asks the Court to entertain the notion that the Proposed Merger is anticompetitive based on roughly one hours' worth of stock price movements. Even assuming that Shapiro's methodology for analyzing this limited dataset

was reliable, "if the analysis is not based upon relevant and reliable data, the expert's opinion will be inadmissible." Laumann v. Nat'l Hockey League, 117 F. Supp. 3d 299, 303 (S.D.N.Y. 2015). In short, the Court finds that there is too great a gap between the small sample size of data on which Shapiro relies and the conclusion that he derives from that data to justify admission of the Stock Price Opinion or related evidence at this time. See Gen Elec. Co., 522 U.S. at 146.

Furthermore, there is cause to doubt the reliability of Shapiro's methodology with respect to the Stock Price Opinion. While the choice to rely on Bloomberg News' "Hot Headlines" may reduce concerns that Shapiro arbitrarily selected the dataset himself, there is nothing to suggest that Bloomberg News selected the "Hot Headlines" with the sort of rigorous analysis or carefully considered methodology that courts would normally expect of an expert. Indeed, as Defendants note, it is difficult to accept the reliability of a methodology that excludes the initial announcement of the Proposed Merger from its dataset when assessing the Proposed Merger's effects. (See Defs. Second Reply Mem. of Law at 2-3.) As the trier of fact in this case, the Court concludes that evidence related to the Stock Price Opinion would not be helpful in the manner

contemplated by FRE 702. Accordingly, the Court grants Defendants' Second Motion.

## IV. THIRD MOTION

Finally, Defendants seek to exclude the expert testimony of Sandoval, including any legal opinions or related evidence regarding the FCC's procedures, its review of the proposed merger, and future actions that the FCC may take. (See Third Motion.) Defendants argue that Sandoval's report amounts to a legal brief setting forth her interpretation of FCC rules and regulations, that her report concerns issues that have already been resolved by the FCC's final order approving the merger, and that her discussion of future FCC action amounts to inadmissible speculation. (See "Defs. Third Mem. of Law," Dkt. No. 264, at 2-4.)

Opposing the Third Motion, Plaintiff States note that Defendants' experts devote significant attention to the remedies that Defendants have proposed to DOJ (the "Proposed Remedies"), which are contingent on future actions to be taken by the FCC. (See "Pls. Third Mem. of Law," Dkt. No. 284, at 1.) Plaintiff States argue that Defendants have placed at issue the FCC's policies, procedures, and future actions with respect to the Proposed Merger by focusing on the Proposed Remedies, their

potential impact on competition, and the FCC's procedural approach to reviewing, approving, or enforcing the Proposed Remedies. (See id.)

In reply, Defendants argue that Sandoval's opinion is not based on specialized knowledge or experience specific to mergers, but is instead merely speculation. (See "Defs. Third Reply Mem. of Law," Dkt. No. 298, at 1.) They add that they have not placed the FCC's legal framework at issue because their discussion of the FCC's waiver review process occupied only two paragraphs, and that they believe it would be appropriate to try the case with no expert testimony regarding the FCC's processes, rules, and regulations. (See id. at 1-2.)

Defendants correctly note that where expert reports read like legal briefs and threaten to usurp judges' duty to determine the relevant law, courts may reasonably exclude such evidence at trial. See TC Sys. Inc. v. Town of Colonie, New York, 213 F. Supp. 2d 171, 181-82 (N.D.N.Y. 2002). However, to the extent that a qualified expert's testimony regarding agency procedures and practices is relevant to issues in the case and does not merely interpret the law or set forth speculation or legal conclusions regarding the agency's action, that testimony and related evidence may be admissible at trial. See, e.g.,

id. at 182 (declining to exclude anticipated trial testimony regarding FCC criteria prior to trial); Raley v. Hyundai Motor Co., No. 08 Civ. 376, 2010 WL 199976, at *4-5 (W.D. Okla. Jan. 14, 2010) (allowing testimony on federal agency practice if relevant to an issue in the case).

While it is not clear that either party must necessarily discuss FCC procedures at trial in this action, the Court agrees with Plaintiff States that Defendants appear to have put FCC procedures and actions at issue through their own expert reports. Accordingly, it would be inappropriate to exclude Sandoval's testimony at this early stage when Defendants may continue to put future FCC review and actions at issue during trial. If Plaintiff States can establish at trial that Sandoval is qualified to testify as an expert, the Court may provisionally allow Plaintiff States to present evidence regarding FCC practices during trial, insofar as such evidence does not amount to mere speculation regarding the agency's future behavior or legal argumentation better suited to a brief. If the Court determines that Sandoval's testimony and related evidence is irrelevant or unreliable, it retains the ability to exclude or disregard such evidence during or after the conclusion of trial. See Chill v. Calamos Advisors LLC, No.

15 Civ. 1014, 2018 WL 4778912, at *7 (S.D.N.Y. Oct. 3, 2018).

## V. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion in limine (Dkt. No. 253) of defendants Deutsche Telekom AG, T-Mobile US, Inc., Softbank Group Corp., and Sprint Corporation (collectively, "Defendants") to exclude evidence of foreign market studies and related testimony and opinions at the trial of this action is **GRANTED**; and it is further

**ORDERED** that the motion in limine (Dkt. No. 256) of Defendants to exclude evidence related to and including the stock price opinion of Carl Shapiro at the trial of this action is **GRANTED**. The Court will defer ruling on the motion in limine (Dkt. No. 263) of Defendants to exclude at the trial of this action the testimony of Catherine Sandoval and any related evidence until after the commencement of trial.

**SO ORDERED.**

Dated: New York, New York
2 December 2019

VICTOR MARRERO
U.S.D.J.