

**STATE OF NEW YORK**
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF ECONOMIC JUSTICE
ANTITRUST BUREAU

December 16, 2019

**By ECF Filing & E-Mail**

Hon. Victor Marrero
United States District Judge
500 Pearl Street
New York, NY 10007-1312

Re:   *State of New York, et al. v. Deutsche Telekom, et al.*, 1:19-cv-05434-VM(RWL)
      Plaintiffs' Opposition to Motion to Exclude Plaintiffs' Ex. 1034 (ECF. No. 340)

Dear Judge Marrero,

There is no merit to Defendants' motion to exclude Plaintiffs' Exhibit 1034 as hearsay.  Ex. A.

**Background.**  Project Greenland was Deutsche Telekom's ("DT's") assessment of strategic options for T-Mobile.  One of the options considered as part of Project Greenland was the merger between T-Mobile and Sprint.  Ex. A.  Exhibit 1034 is a 53-page slide deck that discusses Project Greenland.  Ex. A.  The cover page reads, among other things, "Project Greenland Discussion Materials."  *Id*. at 1.  Fifty-two out of the 53 slides display DT's logo.  *Id*.  Only one of the 53 slides says "Morgan Stanley" on the corner.[1]  *Id*. at 3.

In this litigation, the document came from the files of T-Mobile's Head of Corporate Strategy, Peter Ewens.  In his deposition, Mr. Ewens was asked about Morgan Stanley's connection to Project Greenland.  He explained that Exhibit 1034 "appears to be a Deutsche Telekom document based on the—you know, based on the PowerPoint format."  Ex. B at 14:19-15:3 (Ewens Dep. Tr.).  Mr. Ewens recalled seeing the document in 2011, *id.* at 17:2-4, and after a series of additional questions about the document, Mr. Ewens testified:  "**I believe this is a DT document that was sent to me**."  *Id.* at 21:18-22.  Defense counsel did not question Mr. Ewens on the document.

Thereafter, Plaintiff States also questioned DT's CEO, Mr. Hottges, at his deposition about Exhibit 1034.  Mr. Hottges initially said that he was not "100% sure" that he recognized the document.  Ex. C at 91:18-23 (Hottges Dep. Tr.).  However, after refreshing his recollection, he testified that he indeed recognized it as a DT document:  **"Does the review that we have made refresh your recollection that this Exhibit 4 to your deposition is a DT document discussing Project Greenland in January 2011?  A. Yep."**  *Id*. at 93:15-18.[2]

---

[1] The substantive content of the slide that says "Morgan Stanley" was not the subject of trial testimony by any witness at trial.
[2] DT's motion buries this highly relevant piece of testimony in a footnote, claiming that it is "susceptible to being taken out of context" because the question is "compound."  However, Defendants raised no objection to the question during the deposition, presumably because the question is not compound.  Defendants waived the objection by failing to raise it in a timely fashion.
43505639.2

LETITIA JAMES  
ATTORNEY GENERAL

DIVISION OF ECONOMIC JUSTICE  
ANTITRUST BUREAU

Mr. Hottges then proceeded to explain, in his sworn deposition testimony, that the document accurately described DT's reasons for considering a merger between T-Mobile and Sprint, Ex. C at 99:14-101:24, and that "from 2010 to today DT's reasons for wanting to execute the merger with Sprint have been substantially the same." *Id*. at 187:16-18. **Among the reasons listed in the document is "'Rule of 3' - potential to reduce price competition."** Ex. A at 8. Mr. Hottges unhesitatingly affirmed that this was one of DT's rationales for the merger. Ex. C at 101:16-24. DT's counsel questioned Mr. Hottges about Exhibit 1034, but nothing altering his earlier testimony that it was a "DT document." *Id.* at 262:20-265:15.

At trial, Mr. Hottges contradicted his deposition testimony – now claiming that Exhibit 1034 was *not* a DT document and that the reduction in price competition was *not* DT's rationale for the merger. Ex. D at 192:10-15; 197:6-10 (Trial Tr.). His colleague Mr. Langheim[3] then testified that it was not a DT document, but rather prepared by Morgan Stanley at DT's request. And, Defendants dropped Mr. Ewens from their witness list.

**Argument.** Exhibit 1034 is admissible because it is not hearsay under Federal Rule of Evidence 801. A statement of a party opponent is by definition "not hearsay," so long as one of five enumerated conditions is met. Fed. R. Evid. 801(d)(2)(A)-(E).[4] For such documents, there is no need to invoke or satisfy Rule 803's hearsay exceptions because the document is not hearsay. Here, Plaintiffs satisfy two separate conditions establishing that Exhibit 1034 is a non-hearsay party opponent statement.

**First**, the exhibit was "was made by the party in an individual or representative capacity" under Rule 801(d)(2)(A). As noted in the background section above, the evidence from the discovery phase of this case showed without contradiction that the exhibit is a "DT document" that was later sent by DT to Mr. Ewens.

Mr. Hottges' conflicting testimony on the origin of the document does not render it inadmissible. "Rule 901 provides that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Rule 901 does not erect a particularly high hurdle, and that hurdle may be cleared by circumstantial evidence." *United States v. Tin Yat Chin*, 371 F.3d 31, 37 (2d Cir. 2004) (internal citations and quotation marks omitted). "[A]ll doubts at a bench trial should be resolved in favor of admissibility." *Commerce Funding Corp. v. Comprehensive Habilitation Servs.*, No. 01 Civ. 3796(PKL), 2004 WL 1970144, *5 (S.D.N.Y. Sept. 3, 2004) (citation and internal quotation omitted). Moreover, "the proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001) (citations and quotes omitted). Rule 901's deliberately low-bar is satisfied "if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *Id. (*citing *United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir. 1991)). Where there has been a *prima facie* showing, the opponent's evidence to the contrary goes to credibility, not admissibility. *Mendez v. Int'l Food House Inc.*, No. 13 Civ. 2651 (JPO), 2014 WL 4276418, at *1 (S.D.N.Y. Aug. 28, 2014).

This minimal standard is easily satisfied here, where Mr. Hottges and Mr. Ewens both testified that Exhibit 1034 is a "DT document"; Mr. Ewens testified that he recognized the format as belonging to DT; the document bears DT's logo on 52 of the 53 slides; and Mr. Hottges testified that the document accurately described DT's

---

[3] Mr. Langheim was not asked about the document in his deposition by any party.

[4] The five conditions are separated by the word "or" and are, therefore, disjunctive, meaning that only one need be satisfied.

motivations for the merger of T-Mobile and Sprint. The facts that Mr. Hottges later recanted his own sworn testimony, and that Mr. Langheim contradicted his colleagues' testimony, does not defeat admissibility.

Of course, once the minimum standard of proof for admissibility is satisfied, Defendants "remain[] free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning." *Tin Yat Chin*, 371 F.3d at 38. "But these and similar other challenges go to the weight of the evidence – not to its admissibility." *Id.* In this instance, Mr. Hottges testified unequivocally in his deposition that the Exhibit accurately portrayed DT's rationales for pursuing a merger with Sprint in 2011, and that their reasons for wanting to do so have not substantially changed since then. Ex. C at 187:16-18. At trial, Mr. Hottges was equally unequivocal in denying the truth of his own prior testimony. Ex. D at 198:25-199:15. Defendants are free to argue that Mr. Hottges's trial testimony is for some reason more accurate than his deposition testimony, but that dispute does not make the underlying document inadmissible.[5] And, of course, contradictory testimony by the same witness tends to undercut, not support, the witness' trial testimony.

**Second**, the relevant statements in the document are ones "the party manifested that it adopted or believed to be true" under Rule 801(d)(2)(B). (This ground is separate and independent from our argument under Rule 801(d)(2)(A) above. Satisfying either prong is sufficient.) As noted above, Mr. Hottges testified in his deposition that the rationales for the merger listed in the document represented DT's own rationales. Ex. C at 187:16-19. This establishes that DT believed that the content of the relevant slides was true under Rule 801. *In re: Gen. Motors LLC*, No. 14-MD-2543 (JMF), 2015 WL 8578945, at *2 (S.D.N.Y. Dec. 9, 2015) (Advisory Committee "recommends generous treatment of this avenue to admissibility", and that "adoption or acquiescence may be manifested in any appropriate manner.") (internal citations omitted). As discussed above, Mr. Hottges' subsequent denial of the accuracy of his own prior testimony does not defeat admissibility.

In conclusion, Exhibit 1034 is not objectionable hearsay and should be admitted into evidence. At most, the fact that Defendants' witnesses have provided self-contradicting (and self-serving) testimony under oath relates to the weight of the evidence, not its admissibility. But given Mr. Hottges's sworn testimony that the document accurately reflects DT's rationales for the merger between T-Mobile and Sprint—testimony that is not subject to any objection—Defendants have no valid basis to question the admissibility or relevance of the material. In any case, the dispute concerning the admissibility of the exhibit does not limit Plaintiffs' use of Mr. Hottges' trial or deposition testimony on the subjects found within it.

Respectfully submitted,

Jeremy R. Kasha
Assistant Attorney General

---

[5] DT's reference to metadata attributing the document to an author known as "Taysto" has no impact on this analysis. Mr. Langheim testified in his deposition that DT used Morgan Stanley as a "workbench," meaning that DT would turn to Morgan Stanley to supplement work conducted by DT employees. Ex. E at 233:9-234:7 (Langheim Dep. Tr.). At times, this meant that Morgan Stanley and DT employees were "sitting in one room and working on stuff together." *Id.* at 233:9-17. As a result of this working relationship, "there were occasions then when Morgan Stanley would prepare information and that information would be directly integrated into DT decks." *Id.* at 233:4-10  Under these conditions, the electronic metadata attributing the creation of the document to one author or another is far less informative than sworn deposition testimony. And, of course, the document was ultimately retrieved from the files of T-Mobile executive Peter Ewens, not from "Taysto" or Morgan Stanley.