Pantelis Michalopoulos
202 429 6494
pmichalopoulos@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

# Steptoe
STEPTOE & JOHNSON LLP

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/23/19

December 15, 2019

**By FAX**

The Honorable Judge Victor Marrero
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *State of New York et al. v. Deutsche Telekom et al.*, No. 1:19-cv-05434-VM

Dear Judge Marrero:

We write on behalf of non-party DISH Network Corporation. The defense in the above-captioned case intends to call as a witness Charlie Ergen, founder and Chairman of DISH. Mr. Ergen will testify about DISH's history as a longtime market disrupter, DISH's plan to provide low-priced mobile wireless service to consumers from day one after the merger in question is consummated, and the company's plans and incentives to build a 5G network.

While most of that testimony can proceed in open court, Mr. Ergen intends to testify about two topics involving especially sensitive material—DISH's financial model for its consumer wireless service, and its negotiations with potential strategic partners. While fully cognizant of the right of public access, DISH requests that the courtroom be closed for the limited portions of testimony concerning these two topics. Magistrate Judge Lehrburger has already opined that DISH's confidentiality interests appear to more than offset the presumption in favor of public access to judicial documents in connection with these two categories of information, and the nature of the testimony on these two subjects does not easily lend itself to the format employed in this trial so far to shield other confidential information.

The two areas specifically include:

1. DISH's consumer wireless financial model. In advance of its expected entry as the nation's fourth wireless carrier, DISH has created a detailed analysis of its planned wireless business, which includes its anticipated revenues, margins, churn, amount of network capital expenditures, and customer acquisition costs, among many other figures. This material would be of great interest to DISH's competitors (including Defendant T-Mobile).

2. DISH's strategic partnership discussions. DISH already conducted high-level discussions with various companies who have expressed interest in partnering with DISH on various

The Honorable Judge Victor Marrero
December 15, 2019
Page 2

>aspects of its 5G consumer wireless service. The identity of these potential partners and the substance of such discussions are highly confidential.

We recognize the inconvenience that this step may pose to the court and acknowledge the public's right to observe trial proceedings. In his order regarding use of confidential information at the trial, however, Magistrate Judge Lehrburger did indicate the courtroom could be closed when appropriate. *See* ECF 324 at 3 ("Where questioning of a witness is likely to reveal Confidential information, the courtroom should be closed for the witness's testimony."). Moreover, the Court has approved the confidentiality procedures proposed by non-parties Altice, AT&T, and Comcast, which include closing the courtroom where appropriate. *Id.* This ruling includes DISH. *See* Tr. Dec. 5, 2019 Status Conference at 74:4.

Magistrate Lehrburger has defined "Confidential" to mean "documents or information containing highly sensitive competitive business information that the parties believe in good faith are compliant with the precedent of, and would survive scrutiny by, the Second Circuit Court of Appeals." ECF 324 at 2.

The two categories described above meet this standard, and qualify as trade secrets or other confidential research, development, or commercial information under Fed. R. Civ. P. 26(c)(1)(G). The type of information that DISH seeks to protect is routinely considered confidential by both businesses and courts. *See In re New York Times Co. to Unseal Wiretap & Search Warrant Materials,* 577 F.3d 401, 410 (2d Cir. 2009) ("When litigation requires disclosure of trade secrets, the court may disclose certain materials only to the attorneys involved."); *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.,* 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998) ("Potential damage from release of trade secrets is a legitimate basis for sealing documents and restricting public access during trial."). The information was produced in this proceeding under a Highly Confidential designation, pursuant to the Court's Amended Interim Protective Order (ECF 185). The public has had no prior access to the two categories of confidential information.

Indeed, Magistrate Lehrburger has opined from the bench that both of these categories of DISH information are worthy of protection. The Magistrate has specifically stated that the fact that certain aspects of DISH's financial model have changed did not make earlier versions of the model (which date no earlier than June 2019) stale. Tr. Dec. 5, 2019 Status Conference at 63:8-9 ("It can't just be because there are a few changes that makes it stale. That's a lot of the chassis or the underbody of the car in there, and it still tells you something."). And the Magistrate likewise stated: "Certainly, RFP and responses that have been subject to confidentiality agreements, those are going to contain sensitive information, no doubt." *See* Tr. Dec. 5, 2019 Status Conference at 65:3-4.

Nor would the method of omitting a name or number, as has been done in this case to date, be adequate. A closed courtroom would permit Mr. Ergen to present more fulsome testimony about DISH's plans and discussions than the mere recitation of a number or name could provide. And the confidentiality of such testimony would not be adequately perceived by such limited methods.

The Honorable Judge Victor Marrero
December 15, 2019
Page 3

Third parties such as DISH receive greater protection than parties in the balance between privacy interests and public disclosure. *See e.g.*, *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 82 fn 1 (S.D.N.Y. 2017) (finding that "the privacy interests of the affected non-parties are sufficient to overcome the presumption of access" when "the nature of the information at issue, which concerns internal pricing strategies and competitive pricing data, is sufficiently sensitive to warrant redaction."). Indeed, this case is close to *Dodona*, where this Court held that the presumption in favor of public access was overturned, justifying protection of a third party's "investment strategies" and "proprietary modeling assumptions." *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (Marrero, J).

Conversely, this request is distinguishable from *Barr Labs., Inc. v. KOS Pharm., Inc.*, 362 F. Supp. 2d 421, 422 (S.D.N.Y. 2005) (Marrero, J.), where the parties requested a complete closure of the courtroom for the entire duration of the hearing and had chosen the public forum of the courtroom to adjudicate their dispute. By contrast, DISH, a non-party, is requesting only limited relief for a discrete set of topics and has made no forum choice of any kind.

Finally, as the Second Circuit recognized, "a district judge considering whether to close a courtroom is necessarily engaged in an exercise of prediction regarding the *potential* for disclosure of material that may justifiably be protected even against the presumptive right of public access." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 163 fn 8 (2d Cir. 2013). Even if the courtroom is closed for a portion of the DISH witness testimony, Your Honor can decide after the trial has concluded to release portions of the closed session if the testimony does not in fact rise to the level of a protected trade secret.

DISH has consulted with counsel for Defendants, who have assured DISH that the closed session can be choreographed in a minimally disruptive manner for the Court. DISH understands that the direct examination on these two topics will not exceed 20 minutes.

Sincerely,

/s/
Pantelis Michalopoulos (Pro Hac Vice Motion Pending)
Charles Michael
*Counsel to DISH Network Corporation*

cc: All Counsel of Record (via email)

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by DISH Network Corp.

SO ORDERED.

12-20-19
DATE     VICTOR MARRERO, U.S.D.J.